BLACKWELL *vs.* THE STATE OF GEORGIA.

1. In a criminal case the place at which the prisoner's leg was amputated being a material point, it was error for the court to require him to make profert of himself, so that a witness could see him and describe his condition to the jury. A defendant in a criminal case cannot be required to give evidence against himself, either by acts or words.

2. To state to the jury in a murder case that it was conceded that the deceased was killed with a pistol was error, where no such concession was made, and the weapon used was a material question in the case. That the defendant denies altogether that he committed the homicide, does not admit its commission in the manner claimed by the state.

Criminal Law. Evidence. Charge of Court. Before Judge POTTLE. Elbert Superior Court. March Term, 1881.

Reported in the decision.

MCWHORTER & MCWHORTER; WORLEY & CARLTON; D. M. DUBOSE, for plaintiff in error.

GEORGE F. PIERCE, solicitor general, for the state.

SPEER, Justice.

The plaintiff in error was indicted for the offence of murder. On arraignment and trial had, the jury found him guilty, and the sentence of death was pronounced against him. During the term of the court a motion for a new trial (subsequently amended) was made on various

grounds, as set forth in the record, which was overruled by the court, and defendant below excepted.

The evidence upon which the defendant was convicted was *wholly* and *entirely circumstantial.*

The third ground of the motion for new trial was as follows:

" Because the court erred in ordering and directing the defendant to stand up for the purpose of allowing a witness for the state then on the stand, to-wit, R. E. Adams, to see and testify where his (defendant's) leg was cut off, and in admitting the testimony based on said inspection."

The fifth ground of the motion was as follows:

" Because the court instructed and charged the jury that, ' it is *conceded* in this case that the woman, McMahan, is dead, it is *conceded* that *she was shot with a pistol,* and came to her death by a pistol shot, and the only question for you to determine is who did the killing,' (no such admission or concession having been made by the defendant or his counsel). In reference to this fifth ground of the motion, the court certifies thus in explanation: " This ground does not appear in the original motion which was made at the term soon after the conviction. There was *no word said expressly conceding that the death was caused by a pistol shot,* but the whole defense and argument went to the point that the *defendant did not do the killing.* I so understood the counsel. No point was made upon the *mode* of her death. When the charge was read to the jury, counsel did not call the attention of the court to that part of the charge. If I had misconstrued them I would have gladly recalled the remark, if my attention had been called to it. I had the impression from the *general line* of the defense that such was conceded.' "

1. In reference to the third ground of the motion, it appears that R. E. Adams, a witness for the state, was being examined, who, as appears in the record, was testifying as to tracks and impressions, as they appear to have been made on the ground at and near the house at which the

deceased was slain the night before. He said: " The track we saw was left foot of man, and like he was on his knee of other leg; I saw where he got on the horse; there were three places where he had mired about six inches; we tracked the horse on out and found where it had run up against a chestnut limb; I knew the defendant; I knew the defendant, Allen Blackwell; his right leg is cut off; he has a left foot, but no right foot; (apron produced); that is a part of an apron such as shoemakers generally wear (the apron produced was a piece of old, striped cloth, about one-third or one-half yard long, with a string at upper end long enough to go around a man's neck); shoemakers generally wear aprons from materia of that sort; the death occurred in Elbert county. Question (by the court): *How much of his leg has the prisoner had cut off?* Ans. I don't know sir; I just know he is one-legged; *I can't see.*" (Here, by order of the court, the prisoner stood up and showed his leg, and then witness answered:) " His leg is cut off below the knee."

The testimony thus quoted makes it clear that a portion of this testimony, thus allowed to be given by the witness against the prisoner, was in consequence of the *order* and *command* of the court in directing the prisoner " to stand up " before the jury that the witness might be enabled, from inspection, to testify as to the character and extent of the amputation of prisoner's right leg. Was this evidence admissible, and did the court have authority to *compel* the prisoner to make a *profert* of his person before a witness and the jury, in order to supply what the court must have deemed testimony material to the issue on trial?

Let it be borne in mind that a most material and important part of the testimony against the prisoner was the character of the track and signs made the night of the murder by the one who, in the dark, approached the house where deceased was and fired the fatal shot that caused her death. The track and signs indicated the as-

sassin had but *one leg*, but the character of the other print
on the ground depended materially upon the character of
the amputation of the other limb, and it no doubt was to
establish the correspondence between the amputated limb
of prisoner and the signs on the ground, as testified to by
the witness, that influenced the court to order prisoner to
make *profert* of his limb to the witness testifying and
necessarily to the jury.

In the case of *Day vs. The State*, 63 *Ga.*, 669, this court
held : " Evidence *that a witness forcibly* placed defendant's
foot in certain tracks near the scene of the burglary, and
that they were of the same size, *is not admissible."* A
defendant cannot be *compelled* to criminate himself by acts
or words." The court say : " By the constitution of this
state no person shall be compelled to give testimony *tend-ing* in any manner to criminate himself ; nor can one, by
force, compel another against his consent to put his foot
in a shoe-track, for the purpose of using it as evidence
against him on the criminal side of the court."

In the case of State *vs.* Jacobs, 5 N. C. Rep., 259, the
court says : " A judge has not the right to *compel* a de-fendant in a criminal prosecution to exhibit himself to
the inspection of the jury for the purpose of enabling
*them* to determine his status as a free negro."

So in the case of Stokes *vs.* State, 30 Amer. Rep., *72*,
the court held : " On an accusation of murder, it being
claimed that certain footprints were those of the prisoner,
the prosecuting attorney brought a pan of mud into court
and placed it in front of the jury, and having proved that
the mud in the pan was about as soft as that where the
tracks were found, called on the prisoner to put his foot
in the mud in the pan. On objection, the court instructed
the prisoner that it was optional with him whether he
would comply. The prisoner refused, and the court in-structed the jury that his refusal was not to be taken
against him. The prisoner being convicted, *held he was
entitled to a new trial."* See also 74 N. C., 646 ; 21 Am.
Rep., 493 ; 33 *Ib.*, 540.

2. Was there error in stating to the jury in the charge, as set forth in the fifth ground of the motion, "It is conceded in this case that the woman, Caroline McMahan, is dead, it is *conceded that she was shot with a pistol*, and the only question for you to determine is, who did the killing?"

The only evidence on this subject as appears in the record as to the implement used in shooting deceased was the testimony of the witness, Katie Henry, who was with deceased at the time. They were engaged at the time at night in work on a quilt.

Katie Henry testified : "Aunt Sukey went round to make up a light ; while she was there *a pistol or gun* shot off, and Caroline (deceased) fell under the quilt ; I saw the flash of the pistol ; she fell as soon as I heard the report."

Roebuck testified he was present ; she was shot about 9 or 10 o'clock at night ; she was shot with a pistol or a gun one—a rifle—it shot a ball.

In the absence of *all other testimony*, and in the absence of any admission by prisoner or his counsel that the killing was done with a pistol, was there error in the court instructing the jury "that it was a *conceded fact* deceased was shot with a pistol?" The court, in his explanatory note to this ground, says : "There was no word said expressly conceding that the death was caused by a pistol shot, but the whole defense or argument went to the point defendant did not do the killing." But surely it cannot be insisted that because defendant and his counsel utterly *denied* the homicide, they thereby admitted it was done with "a pistol." The homicide was, under the evidence, an assassination. The deceased was engaged after supper in quilting, and the assassin crept near the house and fired (whether through a door or window does not appear), and deceased fell, shot through the head. No face was seen, but a man was seen to run off, getting over the fence and running up a gully. Charging the jury that the concession had been made by the prisoner or his

Blackwell *vs.* The State.

counsel that the killing was done with a pistol pointed, with startling significance, to the prisoner as the murderer, taken in connection with the other circumstances proved. Next morning after the killing his house and trunk are searched, and a pistol is found in his trunk with one barrel recently discharged, the other barrels not loaded except one, and all these rusty except the barrel recently discharged.

To tell the jury that defendant admitted *deceased* was killed with a pistol, when no one could have known in the dark, but the assassin, the weapon used, and then to prove the prisoner was in possession of a pistol recently fired off in one of its barrels, and all the other facts that point so significantly to his guilt, was to leave scarcely a hope for any other verdict but the one rendered. How much this "admitted concession" stated by the court may have influenced the verdict we cannot tell. It formed a most important link in the damaging circumstances that point so strongly to defendant's guilt. We cannot have, nor do we express, any sympathy for this dark assassination. We will not say the verdict rendered was not abundantly sustained by the testimony, but we are constrained to rule that the same was not rendered upon a fair and impartial trial *under the law.* The errors of law constrain us to order a rehearing. Better that the vindication of outraged justice be postponed for a season than that a human being, however deeply stained with crime, be convicted and punished *contrary to law.*

It is the duty of courts to hold over every citizen, however humble, when arraigned for crime, the broad ægis of the law, and to see to it that he has the full measure of its humane protection until, on a fair and impartial trial, under its rules, he has been duly convicted.

Let the judgment of the court below be reversed on the ground that the court erred in refusing a new trial.

Judgment reversed.