STATE *vs.* ALBERT F. DE CESARE.

MAY 8, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is an indictment for assault with intent to murder.   After a jury trial in the superior court the defendant was found guilty.   The case is here on his bill of exceptions.   Only three of the exceptions in the bill are being pressed, all of the others having been expressly waived. Since each of these exceptions raises the same question, we will treat them as if there were but one exception.

During the trial the defendant was required by the trial justice, at the request of the state, to rise in his place on each of three occasions in order to allow the witness who was then testifying to confirm his identification of the defendant. On each occasion defendant objected, on constitutional grounds, to being compelled to stand for such purpose. Defendant's exceptions are based on these objections.

In support of his exceptions, the defendant contends that when he was compelled to stand he was deprived by the trial justice of a constitutional right expressly guaranteed in our state constitution, namely, "No man in a court of common law shall be compelled to give evidence criminating himself." Art. I, sec. 13. Defendant argues that this provision not only protects him from being compelled to testify against himself or to produce evidence that would incriminate him but also that it protects his person from being used to assist the state in proving the charge laid against him. He claims that he was deprived of such protection on each occasion when he was required to stand for identification by the witness then testifying. He relies on the following authorities which he cites: *State* v. *Jacobs,* 50 N. C. 259; *Blackwell* v. *State,* 67 Ga. 76; *Turman* v. *State,* 50 Texas Crim., R. 7.

We have examined those cases and we think that none of them is sufficiently similar to the instant case to be of any assistance to us in deciding whether the defendant, by being required merely to stand after having been pointed out by the witness, was deprived of his constitutional protection against self-crimination. A brief reference to the transcript of testimony will show quite clearly that the defendant had already been substantially identified by the witness who was testifying and that the defendant was asked to stand solely to confirm such prior identification and for nothing more.

On the examination by the state of its witness Kelley, the following occurred: "Q. The man that came in the store and pointed the gun at you and fired the shot at you, do

you see him in the court room now? A. Yes, sir. Q. Where is he sitting? A. That man there at the end. Mr. Lisker: Will you stand up, please? Mr. McKiernan: I object to this. The Court: Well, the defendant may stand up. (The defendant rises.) The Court: And the witness may point to anyone in the room whom he recognizes as the man he claims pointed the gun at him, and fired the shot. Mr. McKiernan: May I have an exception to Your Honor's order to the defendant to stand up? The Court: Yes. . . . Q. Is that the man you say came into the store and pointed the gun at you? A. Yes, sir."

Later the state's witness Black testified: "Q. Now, this man who walked up to, Mr. Kelley, Mr. Black, can you describe him? A. That gentleman there. Q. You say 'That gentleman there'? A. That is the man there. Q. He walked up to Mr. Kelley that day? A. Yes, sir. Q. You are positive about that? A. Positive. Q. What was that man wearing? A. He had some kind of a dark suit on. Just what texture it was I don't know, but it was a dark suit. He had on a jacket that was buttoned up to the neck, a slouch hat of some kind. Q. You say he is the man that walked in there. Do you mean this defendant here? A. That man. Mr. Lisker: Stand up, Mr. De Cesare. Mr. McKiernan: I object to this, Your Honor. The Court: Stand up. Exception noted."

And finally the state's witness Wolstencroft testified: "Q. The man who was running along Railroad St. and who brushed by you as you were standing near the car, do you see him in the court room? A. Yes. Q. Where is he? A. There. Q. You mean the man sitting where? A. At the lefthand side—the left end of the table. Mr. Lisker: Will you please stand up, Mr. De Cesare? Mr. McKiernan: I object to that. The Court: Stand up. Exception. . . . Q. Is that the man you are talking about? A. That is the man."

Whatever may be the extent of the protection guaranteed to a man in a court of common law by article I, sec. 13

of the constitution of this state, whether it be as extensive as similar guaranties in the constitutions of the states of the defendant's authorities, or whether it should be restricted in the manner and for the reasons expounded by Wigmore, in §§ 2250 to 2266 of the 12th edition of his treatise on evidence, it cannot reasonably be said that the defendant, under the circumstances here, was compelled to give evidence against himself. It is our duty to see that no conviction of a defendant is allowed to stand if he has been deprived of the full benefit of his constitutional rights. It is likewise our duty to see to it that such rights are not extended beyond the reasonable intendment of the constitution to the detriment of justice and on grounds that are fanciful or wholly unsubstantial.

The right invoked here is an important one. Every man entitled to it should obtain it. If it sometimes slackens the speed with which the criminal is punished for his crime, it is well to remember that it is also the shield which protects the innocent from the arbitrary actions of unworthy custodians of public authority who even in a democracy have not been unknown to abuse power in order to achieve ignoble ends. To trace the history of this guaranty, which is prescribed by almost every constitution in the land, and to point out the reasons that prompted the makers of our constitutions to include it in the constitutions of the several states and the constitution of the United States, would be a work of supererogation in view of Wigmore's exhaustive and scholarly treatment of it in his work on the law of evidence. The gist of his discourse therein is that this right is precious and should be enforced, but that it should be kept within the limits of reason and common sense by sound judicial interpretation. With this conclusion we agree.

As far as our reports show, this court has had only one occasion to pass upon our constitutional provision, but in that instance the precise point in question here did not arise. *In re Werner,* 46 R. I. 1. Since the instant case is

the first in which it has arisen, we are anxious not to say anything here that might tend to take away the protection guaranteed by that section. However, under the circumstances here, we are clearly of the opinion that the rulings of the trial justice did not in any way deprive the defendant of such protection.

Defendant's exceptions are therefore overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan,* Attorney General, *Hyman Lisker,* Assistant Attorney General, for State.

*Peter W. McKiernan, John C. Going, John S. McKiernan,* for defendant.