No. 25.—GEORGE W. CRAWFORD, Governor, &c. plaintiff in er-
ror, *vs.* DAVID FOSTER and others, defendants.

[1.] A bond may be delivered as an *escrow*, by the sureties to the principal ob-
ligor.

[2.] If two of the sureties to a Sheriff's bond sign upon condition that the in-
strument is not to be considered as executed until the signatures of two oth-
ers are obtained, and it is left with the knowledge and by the consent of the
Justices of the Inferior Court, who were officiating in taking it, in the hands of
the principal obligor for that purpose, it is no error to admit evidence of
these facts, or to hold that the bond is void as to the defendants who sub-
scribed it, provided the condition was not performed.

Debt on Bond, in Decatur Superior Court. Tried before
Judge WARREN, December Term, 1848.

There were a number of errors assigned in this cause, but the
judgment of the Circuit Court being affirmed upon one point,
and the others not being considered by this Court, it is unneces-
sary to insert a statement of the facts.

For the facts referring to the point decided, the reader is re-
ferred to the opinion of the Court.

W. TAYLOR, for plaintiff in error.

SULLIVAN & BROWN, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is a writ of error to a judgment of the Circuit Court of Decatur County.

It was an action of debt, brought by the Governor of the State, for the use of Green Mitchell, as administrator of William Montgomery, deceased, against David Foster, Ira Sanborn and John Harrell, upon a bond executed by D. Foster, as principal, and the other defendants as his sureties, conditioned, that Foster, who had been elected Sheriff of Decatur County, should truly and faithfully discharge the duties of his office according to law, and should collect and pay over all moneys which might come into his hands.

The breach charged in the declaration, was, that Foster, during his continuance in office, had sold a large amount of property under execution, belonging to William Montgomery, deceased, and that after satisfying the *fi. fas.* in his hands, he had failed to pay over the surplus to the defendant in execution, or his administrator.

Foster, the principal in the suit, was not served, and Sanborn and Harrell pleaded *non est factum* to the bond; and to support the issue joined on this plea, these defendants offered the testimony of S. B. Lonam and William Peabody, two of the Justices of the Inferior Court, who officiated in taking the bond. Lonam swore that he was present at the execution of the instrument; that it was understood at the time, that Dempsey Harrell and William Martin were to sign as sureties. Foster promised to have this done, " and it was upon condition that he would do so, that the defendants subscribed their names. Witness did not consider the bond executed, without being signed by the other two sureties." William Peabody testified that the defendants would not consent to become sureties, unless the other two names were obtained. " And the instrument was placed in the hands of *Foster for that purpose.*"

[1.] Was the instrument, on which suit was instituted, delivered? This is the only point in the case which it is necessary to consider. The plaintiff below, and in error here, who drew this instrument from the Clerk's office of the Superior Court, (neither that officer nor any one else being able to tell how it came there,)

contends that it was delivered absolutely; the defendants, that it was delivered as an *escrow.*

[2.] The evidence of the attesting Justices of the Inferior Court, is full and complete and uncontradicted. They depose, that Sanborn and John Harrell signed the bond, expressly on condition that Dempsey Harrell and William Martin should also sign it; that it was left in the hands of David Foster, the principal obligor, for that purpose; and that witnesses, acting as the agents of the public, did not consider the instrument executed, until this was done. Could the Court refuse to instruct the Jury, that if they believed the from testimony that the bond was never delivered, but left inchoate, that they should find for the defendants? And could the Jury declare otherwise than they did by their verdict? We think not.

In the absence of positive proof to the contrary, the Jury might, perhaps, infer a delivery, from the fact that the bond was found among the papers in the Clerk's office. 3 *No. Ca. R.* 384. 4 *Ib.* 270. But this presumption is expressly negatived by the testimony of the acting Justices, who attested the instrument.

We might feel inclined to regret, with *Chief Justice Marshall,* (*Pawling vs. United States,* 4 *Cranch,* 222,) that *parol* evidence was ever admitted, to show that a bond, upon its face purporting to be delivered absolutely, was nevertheless delivered only as an *escrow.* No doubt that obligees would be much more secure against fraud. But with the Court in that case, we are very clear that the law is well settled otherwise, and is not to be disturbed by this Court.*

Let the judgment, on this ground then, be affirmed.

---

*Note.—See 4 *Watts,* 21.   3 *Wendell,* 380.   2 *Leigh,* 157.   *Minor, (Ala.) R.* 103.   7 *Blackf.* 355.—[Rep.]