No. 57.—SPENCER RILEY, plaintiff in error, *vs.* ROBERT JOHN-
SON, defendant in error.

[1.] If A agrees to join B as his surety on an appeal bond, and executes and
delivers the same, as an *escrow*, on condition that C also shall join in and
execute the bond as co-surety, but C never unites in the bond, A is re-
leased from all liability thereon, at Law or in Equity.

[2.] As between the obligee and obligor, the latter ought not to be permitted
to allege that his deed was not delivered on the day when it bears date,
for the purpose of defeating a recovery. He should, in such case, be held
concluded by his signature to the instrument, from denying that its date is
the true one.

[3.] An appeal bond, signed by four sureties, who give the Clerk to under-
stand, at the time of its execution, that a fifth, whose name was contain-
ed in the body of the instrument, was to sign also, may be considered as
delivered absolutely, and not as an *escrow*.

Motion to dismiss appeals, in Bibb Superior Court. Decided
by Judge STARK, July Term, 1851.

Spencer Riley instituted two actions in Bibb Inferior Court,
against the defendant—trespass on the case, and trespass for
false imprisonment. At the March Term, 1851, of said Court,
verdicts were rendered in the two cases in favor of the plaintiff,
for $16,000, when the defendant took an appeal to the Superior
Court, and James A. Nisbet, J. H. R. Washington, F. P. Hol-
combe, Charles Campbell and David C. Campbell, signed the
appeal bond, as his securities.

At the July Term, 1851, of the Superior Court, counsel for
plaintiff moved to dismiss the appeals, on the grounds—

1st. Because no appeal was entered in either of said causes,
within the time prescribed by law.

2d. Because Charles Campbell, one of the securities on said
appeal bonds, did not sign the same until more than four days
after the adjournment of the Court at which said verdicts were
rendered.

3d. Because said appeals were not entered according to law.

4th. Because they were not entered within the time prescribed
by law.

It was admitted by defendant's counsel, that Charles Campbell, one of the securities on each of said bonds, did not sign either of them within the time required by law.

Edward G. Jeffers, Clerk of the Inferior Court, was sworn, and testified as follows: " Charles Campbell signed one of the appeal bonds three or four days after the expiration of the four days from the adjournment of Court, and the other in May last. The Court adjourned on 20th March. Both bonds were signed by all the other parties within the four days. When the securities signed said bonds, I proposed to strike the name of Charles Campbell out of said bonds, but Mr. Nisbet (the defendant's counsel,) and the other securities being present, gave me to understand that Charles Campbell had to sign the bonds, and not to strike out his name, and let him come down and sign said bonds, which he did as I have already stated. They made some excuse for his not coming down at the time. The other securities signed said appeal bonds within four days. After the time for entering appeals had expired, I applied to plaintiff's counsel, to know if I ought to allow Charles Campbell to sign the appeal bonds then. They said they would not hold me responsible for it, and to do as I pleased about it; that they had no instructions to give me on the subject."

The Court overruled the motion to dismiss the appeals, and counsel for plaintiff excepted.

John Rutherford and Stubbs & Lester, for plaintiff in error.

1st. The bond being signed by only a part of the sureties whose names were at the time in the body, is not binding on those who do sign. 4 *Watts,* 21. 2 *Leigh,* 157. Especially where they sign on the condition and with the stipulation of this case. 4 *Cranch,* 219, 223. 6 *Ga. Rep.* 202. *Chitty on Con.* 419. 2 *Leigh,* 157. 2 *Hill,* 584. Therefore there was no security given within four days, as the Statute requires. *Prince's Digest,* 426.

2. The signing of Campbell *after* the 4 days, did not cure the

defect, whether viewed as an escrow transaction, or tested by the doctrine of relation. Not as an escrow. 6 *Wend.* 666. 9 *Cow.* 255, on *p.* 258. 4 *Kent*, 446. 12 *J. R.* 421. Not by the law of relation. 4 *J. R.* 230, '4. 12 *Ib.* 140. 9 *Cow.* 258. 5 *Ib.* 458. 3 *Wend.* 380, '1.

3d. No *ratification* by the sureties after Campbell signed, (the four days being out,) no act of the Superior Court, and nothing else could supply the ineffectual *attempt* to give security within four days. To these positions : 1 *Murp.* 178. 1 *Munf.* 160. 1 *Murp.* 495, 281. 2 *South.* 503, '4. 4 *Rand.* 460. *Martin &amp; Haw.* 29, 39. 8 *Yerg.* 164. 7 *Ib.* 103. 10 *Miss.* 287. *Ib.* 513. 9 *Cow.* 227. 7 *Mon.* 118, 114. 2 *Ib.* 4. 2 *Marsh.* 459. 17 *Pick.* 295, (a criminal case.) 1 *Murp.* 495, 281. 7 *Mon.* 118, shows the distinction between an *imperfect* bond and one not *binding*. . 4 *Rand.* 460, shows the difference between cases of *discretion* and those of statutory control.

Under 3d point, *Georgia Decisions*, Equity will not help a party who fails to appeal, not being by act of opposite party and not *wholly unmixed* with laches. 3 *Kelly*, 78. 2 *Kelly*, 262, 6 *Ga.* 43, as to necessity of *signing* bill of exceptions in four days and 3 days respectively, or case *dismiseed*. To same point, see 8 *Ga.* 252. 7 *Ib.* 59, 262.

*Note.*—Their decision made to-day, August 18, is only sustaining their decision in 8 *Ga.* 256, on the subject of appeal bonds from Court of Ordinary. The case of an *imperfect* bond, wrong obligee, but yet *a bond.*

PoE & NISBNT, for defendant.

We hold, 1st. That the record must speak for itself, and nothing can be alleged against it by parol. A record is of so high a nature, that no averment can be taken against it. *Co. Lit.* 260, *a.* 16 *John. Rep.* 55. *Green & Green vs. Ovington & Bleeker*, 1 *Leon*, 82. 2 *M. & S.* 565.

The security signing out of time is bound, because he is estopped to deny the date of the bond, which is within the four

days, even though it be not a record. 4 *Com. Dig.* 198, *and authorities there cited.*

2d. A bond is not void, merely because it does not, in all respects, conform to the Statute under which it is taken; it is absolutely void only when the Statute *declares it void.* 12 *Wend.* 306. *Skellinger vs. Yerdery,* 17 *Wend.* 67. *Van 'Deusen & Forrest vs. Hayward and others,* 2 *Kelly,* 236. *Pettee vs. Flewellen.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a motion to dismiss an appeal from the Inferior Court, upon the ground that security had not been given in terms of the law. It is admitted that bonds were executed by the defendant, with four solvent sureties, within the four days prescribed by the Statute. It is insisted, however, that these instruments were not complete; that they were signed by James A. Nisbet, David C. Campbell, James H. R. Washington and Franklin P. Holcombe, with the understanding that Charles Campbell was to sign also ; and that *they* were to be exonerated, provided *he* did not. The record shows, that Charles Campbell did, in fact, subsequently subscribe his name to both of the bonds.

The point at issue between the parties is, the delivery of these instruments—the appellee contending they were delivered as *escrows*—the appellant, that they were delivered *absolutely.*

[1.] The general doctrine will not be disputed, that if A agrees to join B as his surety on an appeal bond, and executes and delivers the bond as an escrow, on condition that C also shall join in and execute the bond as co-surety, but C never unites in the bond, that upon this state of facts, A would be released from all liability for any part of the bond, both at Law and in Equity.

[2.] But here Charles Campbell actually executed the bonds, although after the expiration of the four days within which appeals are allowed to be entered. Still, we apprehend that in an action of debt upon the bonds, at the instance of the appellee,

neither Charles Campbell nor the other sureties could be discharged under the plea of *non est factum.* They would be estopped from denying that this was their act and deed. In legal contemplation, the bonds were regularly executed by all the sureties, on the day upon which they purport to have been given. They are, I repeat, concluded by their signature, and would not be permitted to state that one or all of them signed after the four days had elapsed. 4 *Com. Dig.* 198. 1 *Chitty's Pl.* 354. *Napier vs. Whipple,* 3 *Caine's,* 98. *Brett vs. Van Norden,* 1 *John. Ca.* 390. *People vs. Stephens,* 9 *John. R.* 72. *Green vs. Ovington,* 16 *Johns. Rep.* 55.

In *Tompkins vs. Cervin,* (9 *Cow. Rep.* 255,) the Supreme Court of New York say, "That the defendant ought not to be permitted to say, with a view to defeat the action, without in any manner bearing upon the merits of the case, that his deed was not delivered on the day when it bears date. *He should, in such a case, be held concluded by his own signature to the deed, from denying that its date is the true one.*"

No attempt is made, however, in this case by the sureties, to defeat a recovery. The complaint proceeds entirely from the appellee. He contends that his rights, acquired in the verdict and judgment rendered on the first trial, were improperly and injuriously suspended by this inchoate appeal.

As the appellee has seen fit to submit the question of *delivery* to the *Court* instead of the *Jury,* although manifestly one of *fact* and not of *law,* was the Circuit Judge right in sustaining the appeal?

[3.] The evidence shows that the co-obligors who did sign, would not suffer the name of Charles Campbell to be stricken from the body of the bonds, but "give the Clerk to understand that he was to sign also." But would it, I ask, have occurred to the Clerk or any one else, that his failure or refusal to do so, would vitiate the appeal?—that it was a condition precedent, which if not performed, would discharge the rest from liability?

No such stipulation was made when they subscribed their names. No such previous understanding was pretended or proven. None such, I am sure, could fairly be implied from the

testimony, unless we are prepared to hold that the bare fact, that Charles Campbell's name is mentioned in the body of the bond, is conclusive as to the existence of the agreement.

But the decision of this Court, in *Crawford, Governor, vs. Foster and others,* (6 *Ga. Rep.* 202,) is cited in support of the application to dismiss the appeal; but upon examination, it will be found that that case re-asserts merely the familiar principle, that if a bond is signed and put in the hands of the obligor or some third person, with the knowledge and assent of the obligee, on the condition that it shall become binding only upon the performance of some act by some one else, the paper signed does not become the bond of the party signing the same, until the condition precedent be performed. Until then there is no contract.

The two sureties of the Sheriff who were sued, proved by the two Justices of the Inferior Court, who officiated in taking the bond, that it was understood at the time, that two others were to sign also as sureties; that the principal, who was present, and in whose hands the instrument was placed to obtain these additional signatures, promised to have it done, and the witnesses testified that it was upon this condition that the defendants subscribed their names; that they would not consent to stand unless the other two names were procured; and the Justices, who were the agents appointed by law to take the bond, swore that *they* did not consider the bond executed without being signed by the other two sureties.

I need not comment upon the parallelism, or rather entire want of it, between these two cases.

But *Pauling and others vs. The United States,* (4 *Cranch,* 219,) is confidently relied on in the argument by counsel for the plaintiff in error. It becomes necessary, therefore, to examine this case with some care. It was a writ of error to the District Court for the District of Kentucky.

An action of debt was instituted upon an official bond, given by *Ballinger,* as collector of the revenue, and signed and sealed by *Powling, Todd, Adair and Kennedy,* as his sureties, who pleaded that they delivered the same as an *escrow* to Ballinger to keep

safely, upon condition that if Simon Ingleman and William Patton, named on the face of the bond as *co-sureties*, should execute the same, then the bond should be delivered to James Morrison, supervisor on behalf of the United States, as their deed, and not otherwise; and that the same never was executed by Ingleman and Patton; yet Ballinger delivered it over to Morrison on behalf of the United States, and *so not their deed.* The delivery as an *escrow* being traversed by the United States, issue was thereupon joined, in the trial of which the United States demurred to the evidence produced on the part of the defendants.

It consisted of the depositions of T. T. Davis, W. G. Bryant, one of the subscribing witnesses, Elijah Stapp, another subscribing witness, John P. Wagnon, another subscribing witness, and a letter from Morrison, the supervisor, to Ballinger. The deposition of Davis states a conversation between Ballinger and Powling, sometime before the signing of the bond, in which the former told the latter, that Todd, Kennedy, Shelby, Knox, Ingleman, Logan, Lewis and Adair, had agreed to be security for him, upon which Powling also agreed to become his security, *but upon the express condition that the other persons should join in the bond.*

It also states a subsequent conversation between the deponent and Todd, before signing the bond, in which the latter denied that he had agreed to become Ballinger's security, but said, that he should not be apprehensive of danger, *if all the men whom Davis had named would join in the bond.*

The deposition of Bryant states, that he saw Powling, in the presence of Ballinger, sign the bond, *on condition that Kennedy, Todd, Adair, Davis, and others whom the witness did not recollect, would also sign the bond, and he understood that Powling was to be exonerated if they did not.*

The deposition of Elijah Stapp states, that he saw Powling, in the hearing of Ballinger, acknowledge the bond as his act and deed, *upon condition that others mentioned should also sign it.*

The deposition of Wagnon states, that when Todd, Adair and Kennedy signed the bond, Todd, in the presence of the other

two, after inserting in the bond the names of the other persons who he said were to sign it, *called upon the witnesses to take notice that others were to sign it;* and said, " we acknowledge this instrument of writing, but others are to sign it."

Now the question was as to the sufficiency of this evidence to carry this case to the Jury. The Court below adjudged it insufficient, even for that purpose, whereas the Supreme Court were of the opinion that the case should have been submitted to the Jury upon the testimony.

We concur with Chief Justice *Marshall*, in holding that the proof was complete as to Powling, but less positive as to Todd, Adair and Kennedy, who he considered as standing upon the same footing.

But how much stronger is the evidence as to them, than the sureties upon this appeal bond. Todd had previously declared that he should not be apprehensive of becoming a security for Ballinger, provided others whom he named should also become securities, and he inserted the names of the others in the bond, in the presence of the witness, and this circumstance the Court considered of " some importance" in ascertaining whether or not he signed conditionally.

Again, he called upon the witness " to take notice that others were to sign the bond;" and the Chief Justice emphatically inquires, " To what purpose did they qualify their acknowledgment with this declaration, and call upon the subscribing witness to take notice of it? There is certainly strong reason for believing that the co-obligors considered that declaration as explaining and affecting the act with which they connected it."

But without dwelling longer upon all the points which distinguished this case as to Todd, Adair and Kennedy, from the one at bar, I feel warranted in asserting, that had the motion to dismiss the appeal been made before the Supreme Court instead of the Superior Court of Bibb County, and every particle of proof been incorporated in the record, which was offered in behalf of Todd, Adair and Kennedy, that the application would have been refused.

Says Chief Justice *Marshall*, " A Jury might certainly have

found the issue in favor of the plaintiffs below, *and a Court would have been well satisfied with their verdict.*" But how does this great Judge, who weighed well the full import of words, express himself, when he refers to a finding the other way? Does he intimate that the Court would have been " well satisfied" with such a result? How guarded the language! " Although the Judges who compose this Court *might not perhaps, as Jurors, be perfectly satisfied with this testimony,* they cannot say that a verdict would not be received, which should find the issue in favor of the defendants below "!!! " They cannot say that such a verdict would be *against* evidence"!!!

Can any one doubt that he would have considered it against the weight of evidence at least, and that, consequently, he would have pronounced against this motion, although supported by all the testimony which was adduced in favor of Todd, Adair and Kennedy?

The judgment of the Court below must be affirmed.