RICHARD W. BONNER, guardian, plaintiff in error, *vs.* JOHN A. NELSON, defendant in error.

1. Where, in a suit between the original parties, a promissory note is resisted by a surety who signed and left it with his principal, believing and expecting that another surety was to sign also, but whose signature was not procured, the note being delivered by the principal to the payee without it, the defense, to be available, must comprehend the two elements, of incompleteness of the instrument, and notice thereof, actual or virtual, to the payee; and each of these elements must be presented in the plea so as to be distinctly issuable.

2. Without a stipulation in the contract, or some averment to that effect in the pleadings, there is no presumption that a debt owing to a guardian was, of right, payable in Confederate money, though the note was executed in 1863 and was payable in 1864.

3. For the guardian to reject a tender of payment in Confederate money, made by the principal in 1864, after the note matured, and for him also to discourage the pressing of the tender by a naked promise not to call for payment until after the close of the war, were not wrongful to the surety.

4. Such a promise, made and kept without the surety's knowledge or consent, did not discharge him, notwithstanding the principal was solvent when the promise was made, and afterwards became insolvent. It created no binding contract; and the whole transaction amounted to mere indulgence, without any act or omission contrary to the creditor's duty to the surety, who, so far as appears, gave no notice to sue or to coerce payment.

Principal and security. Negotiable instruments. Presumptions. Confederate money. Before Judge HILL. Twiggs Superior Court. October Adjourned Term, 1875.

Bonner, as guardian, brought complaint against Woodall, as principal, and Nelson, as security, on a note dated February 18th, 1863, for $2,610 37, payable to plaintiff or bearer, and due on January 1st, 1864. Woodall made no defense. Nelson pleaded, in substance, as follows :

1st. Three or four years prior to the making of the instrument sued on, this defendant and one Herbert Reynolds, signed a note as co-securities for Woodall for about $2,000 00, on which the latter borrowed money from the plaintiff. After this note had been due for about three years, Reynolds, without defendant's knowledge, demanded of plaintiff that his name be taken therefrom, that is, that the plaintiff must take steps to collect it or relieve him. Plaintiff was reluctant to sue, so Reynolds had to make his demand a second or third time. Plaintiff then said to Woodall that he wanted to renew the note, giving as a reason that he wished the interest. to be bearing interest for his ward, but not telling him that Reynolds had made the aforesaid demand. Thereupon plaintiff wrote the note sued on and gave it to Woodall to obtain his securities' names, requesting him to attend to it by next day. Woodall brought this obligation to defendant's house and asked for defendant's name, saying, either voluntarily or on being questioned by defendant, that he wished to renew the old note. Defendant then readily signed, supposing and expecting that the same sureties were to be upon it as were upon the old note. Woodall went from defendant direct to plaintiff and delivered to him the note, saying that he had not obtained any surety but defendant. Whereupon plaintiff replied that defendant's name made it good enough, and surrendered the old note which was destroyed. Defendant did not ascertain that Reynold's name was not on the note until about two years afterwards, when it was shown him by plaintiff's attorney for collection.

2d. About the 22d of March, 1864, the following transaction took place between plaintiff and Woodall, without the knowledge or consent of defendant: Woodall tendered to plaintiff, in the then currency of the country, nearly the full amount of the debt, proposing to get the balance in a short time. Plaintiff made some remark about its being unpopular to refuse Confederate money, and asked Woodall not to press it on him. The latter replied, "Captain, I have the money now, and you might want it some time when I did not have it." To which plaintiff answered, "No, I will not call upon you until after the war." Woodall made some remark conjecturing that he might then be broke. Plaintiff did carry out this promise, and did not call for the money until some time after the war, when Woodall had become insolvent, though solvent when the indulgence was given.

On demurrer to these pleas, the first was stricken and the second sustained. The evidence for the defendants made substantially the case presented by the second plea. Woodall testified that at the time of tendering the Confederate money he also offered to let plaintiff have thirteen bales of cotton, to be applied to the note; that he, also, at another time, offered him a house; that these offers were declined.

The plaintiff admitted that Woodall, some time in 1864, did offer to pay a part of the note in Confederate money, saying that he had a check for about $2,000 00, and a part in money, and could get the balance, though he showed neither check nor money. He declined to receive the money, saying the note did not belong to him, and that if it did he would take it; that he did not think it fair to his ward, who was absent in the army, but that if he saw any chance to make a beneficial investment, he would call on Woodall for the money. Admitted also the offer of the cotton, and of a house, both of which he declined. Woodall also stated that if plaintiff waited until the war was over that he and all of us might be broke; to which plaintiff replied, that if all were then broke, then all would go up. together, and nothing could.be made

out of anybody.    He denied the agreement to indulge until after the war.

The court, among other things, charged the jury, in substance, that if they found the facts to be as stated in the second plea, the defendant, Nelson, was discharged.

The jury found for the plaintiff as against Woodall, but against him as to Nelson.

Plaintiff excepted to the refusal to strike the second plea, and to the above charge.    The defendant, Nelson, excepted to the judgment striking the first plea.    Assignments of error were made accordingly.

R. F. LYON; WHITTLE & GUSTIN, for plaintiff in error.

RUTHERFORD & RUTHERFORD; S. HALL, for defendant.

BLECKLEY, Judge.

1. If the renewal note was incomplete for lack of the signature of one of the sureties who had signed the former note, and the creditor accepted it, knowing it to be incomplete, it would not be binding upon the surety who signed it.    But if the latter signed and delivered the note to the principal, with no understanding, express or implied, that it was to be signed by the former co-surety; or if there was such an understanding, and the principal, in violation of it, delivered the note to the creditor, and the creditor took it and surrendered the old note, without any notice that the principal was acting in breach of his instructions or of his duty, then, the creditor, having been wholly innocent in the transaction, would be entitled to stand on the renewal note as a complete and binding contract between the makers of that note and himself:   See the case cited in 1 Central Law Journal, 560; compare, also, 6 *Georgia Reports*, 202; 8 *Ibid.*, 559; 10 *Ibid.*, 414; 11 *Ibid.*, 286; 13 *Ibid.*, 61; 17 *Ibid.*, 111.   The surety who signed the note cannot protect himself against the consequences of a delivery by his principal, without taking both steps; he must show that the instrument was incomplete, and that the creditor

Bonner *vs.* Nelson.

knew it.  Both points should be distinctly alleged in the plea, so as to be issuable.  Neither of them should be presented argumentatively only.  They can both be directly pleaded, if they are true; and if only one of them, or if neither of them, be true, no amount of indirect, argumentative pleading can avail.

2, 3.  The note mentioned no particular medium of payment.  It was a note for money.  The original debt was not a Confederate debt.  The creditor was a guardian, and, as to him, the fund was a trust fund.  He was under no obligation, legal or moral, to accept payment in depreciated currency, such as Confederate treasury notes, unless he had thought it was for the benefit of his ward to do so.  It was his right to reject such currency when offered by the principal debtor in payment.  He did not, thereby, discharge the surety.  A different result, in that respect, would probably have followed the rejection of an offer to pay in actual money: See 2 Paige, 497; 46 Vt., 258; 25 Mich., 351; 35 Md., 262; 9 Gill, 284; 56 N. Y., 348.  The creditor's promise not to call for payment until after the close of the war, was without consideration.  It was a naked promise, made to get clear of making an absolute refusal of the Confederate currency.  The odium, perhaps the danger, of such a refusal may have been calculated to injure him; but if so, his debtor had no right to raise the peril, and then grant exemption from it at the ward's expense.  The debtor knew he was dealing with a guardian, and not with a creditor who had a right to consult his personal advantage.

4.  The promise itself did not discharge the surety, nor did the keeping of it discharge him, although the principal became insolvent.  There being no consideration or valid contract between the parties, the forbearance was mere indulgence.  The creditor might have brought suit at any time.  He did not tie his hands.  And there was no legal benefit resulting to him.  Not even was there a new point established for the statute of limitations to commence running, as there was said to be in the case reported in 27 *Georgia Reports,*

564. When the present case arose, the Code, section 2934, was in force; and the promise with which we are now dealing was oral. It was a complete nullity: 33 *Georgia Reports*, 173.

Judgment reversed.