## MOORE *v.* FARMERS' MUTUAL INSURANCE ASSO.

1. It is competent and lawful for an insurance company, in defense to an action upon a fire policy purporting to have been issued by it, to plead that the same was never in fact delivered, but merely handed to the person therein named as the insured, under an agreement that it was not to become binding upon the company until he had cancelled another policy in a different company insuring the same property, which was never in fact done ; and parol evidence is admissible to prove a plea of this kind.
2. Persons related within the prohibited degree to members of a mutual fire-insurance company, who are liable to be assessed for the purpose of raising the money to pay losses incurred by it, are incompetent to serve as jurors on the trial of an action against such company upon one of its policies; and where persons so related actually served as jurors on such a trial without the knowledge or consent of the losing party, a new trial should be granted notwithstanding the ignorance of these jurors that their kinsmen were members of the company.　It is not in such a case incumbent upon the plaintiff to ascertain in advance of the trial who are the members of the company, with a view to having them excluded from the panel of jurors.

Argued March 21,—Decided April 19, 1899.

Action on insurance policy.　Before Judge Reese.　Oglethorpe superior court.　April term, 1898.

*W. M. Howard* and *Samuel H. Sibley*, for plaintiff.
*Hamilton McWhorter*, for defendant.

Cobb, J.　W. F. Moore sued the Farmers' Mutual Insurance Association upon a policy of fire-insurance.　The defendant pleaded, among other things, that at the time the policy sued on was issued the plaintiff had a policy of insurance in another company on the same property ; that it was distinctly agreed

between the parties that the policy issued plaintiff by the defendant should not become operative until the plaintiff cancelled the other policy, and that if this was not done the policy sued on should become void and of no effect; that plaintiff failed to cancel the other policy, but left the same open and operative, whereby the policy issued by the defendant became null and void; that as soon as defendant was informed that plaintiff was claiming to be a member of the defendant association and that it was liable upon the policy issued him, defendant offered, and does now offer, to refund to plaintiff the premium paid by him to its agent. Upon the trial a verdict was rendered in favor of the defendant. Plaintiff made a motion for a new trial upon grounds hereinafter referred to, and upon the same being overruled, he excepted.

1. One of the grounds of the motion for a new trial was as follows: "Because the court erred in admitting the following testimony of W. J. Davenport, a witness for the defendant: 'The policy was delivered to Mr. Moore upon the condition that it was not to be operative until he cancelled the policy in the Hartford.' Said testimony was objected to at the time (and all other testimony of the same import was so objected to), on the ground that parol evidence was not admissible to impeach the delivery to the plaintiff or to contradict or vary the written policy." If the effect of the evidence objected to was to add to, take from, contradict, or vary the terms of a valid written contract, the evidence was of course inadmissible. Civil Code, §§ 3675, 5201. This, however, was not the purpose of the testimony. It was offered, not to vary the contract, but to prove a state of facts from which it would be manifest that no contract of insurance had ever been entered into between the parties. The controversy between the parties was whether or not the paper sued on constituted a contract between them. If the paper contained a contract of insurance, there was no dispute as to its terms; nor was there any pretense that either party was bound in any other way than that set forth in the writing. Did this writing constitute a contract? Had each party assented to it? And had it become a complete and binding agreement between them? If it did constitute a

contract between them, then it must be looked to to determine the terms and conditions of the contract, and parol evidence would not be admissible to vary any of the stipulations therein contained. The evidence admitted did not in any way alter any stipulation in the paper claimed by the plaintiff to be a contract of insurance; the effect of the testimony being simply to show that there was no contract between the parties. The paper had been delivered to the plaintiff, but the parties had agreed that it should not be a contract until the plaintiff had performed certain acts which were expressly made conditions precedent to the completion of a contract between them. It is true that a manual delivery of a paper purporting to contain a contract of insurance is prima facie evidence of a binding contract of that character. 1 May, Ins. §§ 56, 60. But the purpose of the testimony admitted was to rebut the presumption arising from the possession by the plaintiff of the policy. It has been held by the English courts, as well as by courts of many of the States of the Union, that evidence of the character admitted in the present case is admissible; and that the admission of the same does not infringe upon the well-settled rule which prohibits the introduction of oral testimony to vary the terms of a written contract. In the case of Pym v. Campbell, 6 El. & Bl. 370, Lord Chief Justice Campbell uses this language: "No addition to or variation from the terms of a written contract can be made by parol; but in this case the defence was that there never was any agreement entered into. Evidence to that effect was admissible; and the evidence given in this case was overwhelming. It was proved in the most satisfactory manner that before the paper was signed it was explained to the plaintiff that the defendants did not intend the paper to be an agreement till Abernethie had been consulted, and found to approve of the invention; and that the paper was signed before he was seen only because it was not convenient to the defendants to remain. The plaintiff assented to this, and received the writing on those terms. That being proved, there was no agreement."

In Wallis v. Liddell, 11 C. B. (n. s.) 368, the defendant pleaded that the agreement declared on was made subject to the con-

dition that it should be null and void if a named person should not, within a reasonable time after the making of the agreement, consent and agree to the transfer of a certain farm to the plaintiff; and it was held that "it was competent for the defendant to prove by extraneous evidence this contemporaneous oral agreement; such oral agreement operating as a suspension of the written agreement and not in defeasance of it." In Faunce *v.* Insurance Company, 101 Mass. 279, a suit was brought upon a policy of insurance. The plaintiff undertook to show that the defendants agreed to issue such a policy as was sued on, and that the terms on which it was to be issued were fully complied with; that the policy was written and executed, and thereby became a valid contract; and therefore, though the paper was not delivered, and remained in the hands of the defendants or their agents, that it was her property and would support her action. To meet this the defendant proved by parol that it was agreed between the parties that the policy should issue, not in addition to, but as a substitute for, a policy previously made, which was to be surrendered ; that the earlier policy was not surrendered, but had been enforced and paid. It was held that it was competent to prove this defense by parol evidence, "because the evidence is not to vary the contract, but to prove whether any contract was made. No written contract passed from one party to the other; and the point in controversy is whether the parties agreed that a certain paper, without more, should be the contract. This must, of course, be proved by parol." See also Markey *v.* Insurance Company, 126 Mass. 158. In Benton *v.* Martin, 52 N. Y. 570, the Court of Appeals of New York held: "An instrument not under seal may be delivered upon conditions, the observance of which as between the parties is essential to its validity; and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions upon which the delivery was made. And this is so as between the parties to it or those having notice, although the instrument be negotiable. The annexing of such conditions to the delivery is not an oral contradiction of the written obligation." The same court in Reynolds *v.* Robinson, 110 N. Y. 654, held that "Parol evidence is admissible to·

show that a writing, which is, in form, a complete contract, of which there has been a manual tradition, was not to become a binding contract until the performance of some condition precedent resting in parol." The court, however, said that to avoid "mistake or imposition, this rule should be cautiously applied, and confined strictly to cases clearly within its reason." A similar ruling was made by the Supreme Court of New York in the case of Harnickell v. Insurance Co., 40 Hun, 558, which was affirmed in 111 N. Y. 390. See also Blewitt v. Boorum, 142 N. Y. 357. Evidence of this character was held admissible by the Supreme Court of Maryland in the case of Beall v. Beall, 27 Md. 645; it being there said that, "Where a question is raised as to the existence of a partnership, parol proof proffered to show that the articles of copartnership was a paper, which it was agreed among those who signed it should not be given up by the party who prepared it, and who himself was not to be bound by it until he should be satisfied, by a schedule produced to him by two of the parties, that their indebtedness did not exceed a certain amount, is admissible as evidence to prove that the partnership did not in fact exist among all the parties, until the condition, upon which the paper was to take effect, was complied with." In the case of Sweet v. Stevens, 7 R. I. 375, it was held that evidence of the character admitted in the present case was admissible. Bulloch, J., in the opinion of the court says: "The question here is not a question touching the consideration of a check, a want or failure of which, between the original parties, may be shown; neither is it, upon the facts stated, a question whether parol evidence may be offered to vary or change an absolute written promise into a conditional one; but, rather, whether it is competent to show by parol that such written promise grew out of an oral agreement or negotiation, which agreement was inchoate and unexecuted in fact by either party, not to be regarded as *obligatory*, but its operation and efficacy suspended until the happening of an event then *in futuro*. In such a case, the rule which presumes the written instrument to embody the entire contract and all its stipulations does not apply. The oral evidence is offered, not to contradict or vary the writing, but admitting, seeks to

avoid it by showing that, as an entire and independent agreement, it has no present legal effect. . . An agreement, although reduced to writing and signed, is not necessarily operative from its apparent delivery, even if there be nothing upon its face to show that its operation is suspended. Its actual and complete delivery, in intent, may be made to depend upon some event thereafter to happen. In the meanwhile, the agreement may rest formally *in escrow*, in the hands of a third person, or it may be delivered to the party himself in the nature of an escrow, the intervention of a third person not being absolutely necessary to make the transfer, in effect, conditional."

It was decided by the Supreme Court of Connecticut in McFarland *v.* Sikes, 54 Conn. 250, that : "Proof that, at the time a note was executed and put into the hands of the payee, an agreement was made that it should be returned to the maker upon a certain day if he should then demand it, does not contradict or attempt to vary the terms of the note, and the agreement may be proved by parol evidence." The rule is thus stated by the Supreme Court of Minnesota in Westman *v.* Krumweide, 30 Minn. 313 : "Parol evidence is admissible to show that a contract not under seal, delivered by the maker to the party in whose favor it runs, was not intended to be operative as a contract from its delivery, but only on the happening of some future contingent event, though that not be expressed by its terms." This decision was followed in the case of Skaaraas *v.* Finnegan, 31 Minn. 48. The admissibility of such evidence is also recognized by the following text-writers : 1 Bacon, Ben. Soc. and Life Ins. § 276 ; 1 Joyce, Ins. §§ 96, 97; Cooke, Life Ins. § 24 ; Browne, Parol Evidence, § 32. We have found nothing in the decisions of this court in conflict with the principle established by the authorities above cited. The precise question made in the present case seems never to have been passed upon by this court. In *Crawford* v. *Foster*, 6 *Ga.* 202, it was held that a bond may be delivered as an escrow by the sureties to the principal obligor, and that it was not error to admit parol evidence to show that two of the sureties on a sheriff's bond had signed upon the condition that the instrument was not to be considered as executed until the signatures of two other persons had been

obtained as sureties; the bond having been left in the hands of the principal obligor for that purpose. While it appeared that this arrangement between the sheriff and the sureties was made with the knowledge and consent of the justices of the inferior court, "who were officiating in taking the bond," there was no evidence that the officer to whom the bond was payable was any party to the agreement between the obligor and the sureties. Nothing in this case bears directly upon the question at issue, as the agreement set up there was between the obligor and the sureties, and no attempt was made to set up any agreement between the obligor and the obligee in the bond. It was ruled in *Riley* v. *Johnson*, 10 *Ga.* 414, that "An appeal bond, signed by four sureties, who gave the clerk to understand, at the time of its execution, that a fifth, whose name was contained in the body of the instrument, was to sign also, may be considered as delivered absolutely, and not as an *escrow*." The court treated the bond as absolutely delivered in that case, because there was no evidence that there was any agreement between the sureties that the bond was not to be considered as delivered until the same was actually signed by the fifth surety. Judge Lumpkin in the opinion says: "The evidence shows that the co-obligors who did sign would not suffer the name of Charles Campbell to be stricken from the body of the bonds, but 'give the clerk to understand that he was to sign also.' But would it, I ask, have occurred to the clerk, or any one else, that his failure or refusal to do so would vitiate the appeal?—that it was a condition precedent, which if not performed would discharge the rest from liability? No such stipulation was made when they subscribed their names. No such previous understanding was pretended or proven. None such, I am sure, could fairly be implied from the testimony, unless we are prepared to hold that the bare fact that Charles Campbell's name is mentioned in the body of the bond is conclusive as to the existence of the agreement."

In *Bonner* v. *Nelson*, 57 *Ga.* 433, a suit upon a promissory note was resisted by a surety who signed it and left it with his principal, believing and expecting that another surety was to sign also, but whose signature was not procured, the note being

delivered by the principal without it. It was held that to make this defense available it must be shown, not only that the instrument was incomplete, but also that the payee had notice of this fact at the time that it was delivered to him. Nothing there said throws any light upon the question involved in the present case. In *Jones* v. *Smith*, 64 *Ga.* 711, it appeared that two persons had signed the bond of the State treasurer as sureties. The bond was absolute and unconditional on its face. It obligated the principal to discharge thoroughly his duties during his term of office, and that term, specified in the bond, was four years. Parol evidence was offered to show that this bond was accepted by the Governor as a temporary bond, to be void when a new bond, with new securities, was executed. This was an effort to vary by parol the terms of a written instrument, and the evidence was properly held to be inadmissible. Judge Pottle in the opinion says: "It was argued, and numerous cases were cited, to show that parol evidence was admissible to show the non-delivery of a contract; and that when a writing purporting to be signed, sealed, and delivered, was only delivered upon a condition, a condition, for example, that others were to become cosureties, parol evidence is admissible to show the condition. The character of such proof goes to the extent, and no farther, of showing that there was not a complete execution of the instrument. It would have been admissible in this case to have shown that the bond was not delivered; but the proof offered goes beyond this; it admits the delivery of the bond, and seeks to engraft upon it a stipulation wholly inconsistent with it."

There is nothing in the case of *Lewis* v. *Commissioners of Gordon County*, 70 *Ga.* 486, to conflict with the ruling now made. In that case it was attempted to prove by parol that a bond of the county treasurer, absolute on its face, was left with the ordinary on condition that certain persons whose names were signed thereto as sureties would not be bound until other persons had also signed in a like capacity. It was held that this could not be done, for two reasons: first, because it appeared that several years had elapsed during which time the sureties had failed to inform themselves, or even make inquiry, as to whether the

·condition had been performed, and in consequence of the bond thus made their principal had received his commissions as county treasurer and had received the public revenue for which he failed and refused to account; and second, because it was never communicated, or even intimated, to the Governor, the payee in the bond, that the same had been signed upon the condition sought to be set up by the sureties after the breach of the bond by the principal. In *Hansford* v. *Freeman*, 99 *Ga.* 376, Justice Atkinson says: "It is no contradiction of a written agreement, which does not of itself purport to have been delivered, to assert its non-delivery, and, therefore, parol evidence is admissible to disprove the fact of delivery." It is true that in that case while the person to whom a promissory note was delivered was the agent of the payee, he was also the agent of the maker; and therefore the delivery was really in escrow, this mutual agent being considered for the purposes of that case as a third person. The rule invoked in the present case is not applicable to deeds. They stand upon a different footing; and it is well settled in this State that a deed can not be delivered to the grantee as an escrow, and that delivery to him at once vests the title to the property. *Jordan* v. *Pollock*, 14 *Ga.* 145; *Duncan* v. *Pope*, 47 *Ga.* 445. The distinction between deeds to realty and other contracts in regard to this matter is distinctly recognized in some of the decisions above cited. There was no error in admitting the evidence objected to.

2. Another ground in the motion for a new trial was, that certain of the jurors who tried the case were so nearly related to policy-holders in the defendant association as to disqualify them from acting as jurors in the case. The jurors alleged to be disqualified were respectively a first cousin, a nephew by marriage, a nephew, a second cousin, a brother-in-law, and an uncle by marriage of different persons who were policy-holders. Attached to this ground of the motion were a number of affidavits as to the truth of the facts set forth therein. The affidavit of the plaintiff was to the effect that he was ignorant of the disqualification of the jurors; that he knew that one of them was related to a person who was a policy-holder, but that he did not know until after the verdict that such person was a

policy-holder.    There was also an affidavit of Samuel H. Sibley, Esq., to the effect that he was the sole counsel for the plaintiff present at the trial of the case, and that he was ignorant of the relationship of the jurors to the policy-holders in the association until after the verdict was rendered.    At the hearing of the motion for a new trial affidavits were presented from the jurors alleged to have been disqualified, from which it appeared that they knew of the fact of relationship before the trial, but did not know that their relatives were policy-holders until after the verdict was rendered; and that they were perfectly impartial in the case and rendered a verdict according to the law and evidence.    That the jurors in question were so nearly related to the policy-holders as to disqualify them from serving as jurors in the case is clear; and that this fact was unknown to the plaintiff or the counsel who represented him at the trial is sufficiently established.    The defendant being a mutual association, each policy-holder therein would have to bear his proportionate share of any sum for which it might be liable; and hence the kinsmen of the jurors whose disqualification is sought to be established would have had to pay their pro rata portion of any sum which the plaintiff might have recovered against the defendant.    It is contended, however, that a new trial ought not to be granted on this ground of the motion, for two reasons: first, because the jurors were ignorant of the fact that their kinsmen were policy-holders, and therefore they could not have been influenced by this fact; and second, because the plaintiff and his counsel by the exercise of ordinary diligence before the trial could have ascertained who were policy-holders in the defendant association.    Two things are thoroughly well established by the decisions of this court: first, that a near kinsman of a stockholder in a corporation is disqualified to act as a juror in the trial of a case where the corporation is a party; and second, that such disqualification unknown to the opposite party or his counsel until after trial is a ground for a new trial.

In the case of *Georgia Railroad* v. *Hart*, 60 *Ga.* 550, it was held that the son of a stockholder in a private corporation was an incompetent juror in a case where the corporation was a party; and that, as the ground of disqualification was unknown

to the opposite party or his counsel until after the trial, it was cause for a new trial. In *Georgia Railroad* v. *Cole*, 73 *Ga.* 713, it was held that on the trial of a suit for damages against a railroad company, a brother of one stockholder and a son-in-law of another were incompetent jurors, and that a verdict rendered by a jury on which they sat was illegal. Justice Blandford in the opinion says: "A jury composed of men who are not lawful men, men whose relationship to the parties renders them incompetent as jurors, can not render a lawful verdict. If the parties consent to the jurors, or have knowledge of their incompetency, then they will be held to waive the same. It can not be said that the defendants in error have had their case tried; certainly not legally; and, although the verdict may be in accordance with the facts, and such as a lawful jury should have rendered, yet it is no verdict, and the court did right to set it aside." In *Rust* v. *Johnson*, 47 *Ga.* 538, one of the grounds of the motion for a new trial was that one of the jurors was a cousin of one of the defendants, which fact was not known to the defendant until after the trial. This was held to be a ground authorizing a new trial. In *McElhannon* v. *State*, 99 *Ga.* 672, four of the jurors were related to stockholders in the company that was the victim of the crime for the commission of which the accused stood indicted; and a new trial was granted on this ground. The jurors held to be disqualified in that case were respectively brother-in-law, first cousin, grandson, and nephew of stockholders.

The defendant in error contends, nevertheless, that a new trial was properly refused, because due diligence was not exercised in ascertaining before the trial whether these jurors were disqualified. When parties to a case announce ready for trial, it is the duty of the court, if the case is one to be tried by a jury, to furnish a panel of jurors composed of persons competent to sit as jurors in the case. When parties are furnished with a list of the jury it is their duty, if they know that any of the jurors are disqualified, to call attention to the same, or the disqualification will be held to have been waived. If they have reasonable grounds to suspect that any of the jurors are disqualified, it is their duty to call attention to the fact, so that

due inquiry may be made of the panel. Further than this they are not required to go. Due diligence requires no more than this. The rule in reference to such matters is thus stated by Judge Stephens in *Brown* v. *State,* 28 *Ga.* 439: "He must make the objection at the right time, if he knows of the fact, but if he does not know of the fact nor have special reasons to believe it, he is not bound to offend every man on the panel by making random imputations against him." Parties are not required to make searching investigations out of court to determine whether the jurors who are summoned are disqualified in their cases. Not only is such a duty not placed by the law upon parties and their counsel, but the contrary practice is to be encouraged, for obvious reasons. Was the fact that the jurors were ignorant that their kinsmen were policy-holders sufficient to make a verdict rendered by them lawful? We do not think so. This question is settled by the decision in the *McElhannon* case, supra. The jurors claimed to be disqualified in that case were so closely related to the stockholders that it is impossible to conclude that they were ignorant of the relationship, and they did not swear that they were. The affidavit of the jurors in that case was the same in substance as those made by the jurors in the present case, and that was that they were ignorant of the fact that their kinsmen were stockholders. The *McElhannon* case is therefore direct authority on the point. But even if it were not, we would have no hesitancy in holding that in such matters there is no rational distinction between ignorance of the fact of relationship, and ignorance of the fact that the kinsman is a stockholder in a corporation. Chief Justice Jackson, in *Ledford* v. *State,* 75 *Ga.* 856, says: "It would be too dangerous a precedent to allow the juror to assert that he was ignorant of the relationship till after the trial." What is there said applies with equal force to ignorance of the fact that a relative is pecuniarily interested in a case. If the plaintiff or his counsel had known that these jurors were related to the policy-holders at the time of the trial, or had "special reasons to believe" that such was the case, it was their duty to have called attention to the fact so that the court could have made due inquiry of the panel; but, as the jurors were ignorant of the disqualifi-

cation themselves, inquiry would have amounted to nothing. The plaintiff has brought himself, we think, clearly within the rule, and is entitled to a new trial before a jury qualified under the law to pass upon his case.

Judgment reversed.    All the Justices concurring.