## 35407. PICKERING *v.* WAGNON.

DECIDED JANUARY 12, 1955—REHEARING DENIED MARCH 10, 1955.

*Adams & McDonald, Isaac C. Adams,* for plaintiff in error.
*H. E. Kinney, Pittman, Hodge & Kinney,* contra.

QUILLIAN, J. Special ground 1 of the amended motion contends that the plaintiff was not furnished with a full panel of qualified jurors from which to select a jury, because Nell Springfield was a policyholder in State Farm Mutual Automobile In-

surance Company, a mutual insurance company that insured the defendant against injuries that he might inflict upon others by reason of the operation of his automobile.

The plaintiff shows in this ground that, before she began striking the jury, her counsel called to the court's attention that any policyholder of said company or relative of policyholder, within the sixth degree, or employee, would be disqualified from considering said case, and requested that such persons should be removed from the panel, and that a full panel of qualified jurors be furnished the plaintiff from which to strike the jury. Thereafter, the court inquired of all jurors whether or not any were policyholders, employees, or related by blood or marriage to any policyholder of State Farm Mutual Automobile Insurance Company. Harold Springfield did not disqualify himself and was left on the panel. The plaintiff struck him from the panel and thereby exhausted her peremptory strikes.

An affidavit of Nell Springfield was made a part of the motion, and it showed the relationship of Harold Springfield to her at the time of the trial, and also that she was a policyholder in State Farm Mutual Automobile Insurance Company. A copy of the policy was also made a part of the record.

It was also made to appear that the plaintiff and her attorney acted with due diligence, and that neither learned of said disqualification of Harold Springfield until after the verdict was returned.

The plaintiff contends that she was entitled to her peremptory strikes on qualified jurors, and was denied this right because she was forced to use one of these strikes in striking the name of a disqualified juror from the panel put upon her.

A policyholder in State Farm Mutual Automobile Insurance Company is a stockholder, is entitled to a dividend on the net earnings of the company, and has the right to vote, which is pointed out in one of the provisions of the policy. Therefore, being a policyholder, she was in fact a stockholder, which would disqualify her or a relative of hers within the sixth degree, from serving on the jury in this case. *Bibb Mfg. Co.* v. *Williams*, 36 *Ga. App.* 605, 607 (137 S. E. 636).

It has been held by our appellate courts, in cases too numerous to cite, that a juror who is related to a stockholder is incompetent

to serve as a juror on the trial of an action against the company, unless the losing party has consented for the juror to serve on the jury. This is true though this relationship be unknown to the juror. *McElhannon v. State,* 99 *Ga.* 672 (1) (26 S. E. 501); *Moore v. Farmers Mut. Ins. Assn.,* 107 *Ga.* 199 (33 S. E. 65).

The defendant cites in support of his position several cases which hold that it was not reversible error for the court to require the plaintiff to use one of his peremptory strikes in removing the juror from the panel. But those cases are distinguished from the case at bar, because in those cases the plaintiff did not exhaust his peremptory strikes and consequently was not harmed by being deprived of a strike. But in the present case the record shows that the plaintiff did exhaust her peremptory strikes.

Each party may demand a full panel of twenty-four competent jurors from which to strike a jury. Code § 59-704. From the panel of twenty-four jurors, each party is entitled to six peremptory strikes.

The plaintiff used one of her peremptory strikes in striking Springfield who was disqualified, thereby denying her one of her strikes, to which she was entitled, because Springfield should never have been on the panel. The plaintiff had the right to twenty-four impartial jurors from which to strike a jury. *Mayor &c. of Columbus v. Goetchius,* 7 *Ga.* 139; *Howell v. Howell,* 59 *Ga.* 145. In this case the plaintiff was denied that right, and the denial was harmful error. *Atlantic Coast Line R. Co. v. Bunn,* 2 *Ga. App.* 305 (58. S. E. 538). "A big part of the battle is the selection of the jury, and an impartial jury is the corner stone of the fairness of trial by a jury." *Melson v. Dickson,* 63 *Ga.* 682, 686 (36 Am. R. 128); *Atlanta Coach Co. v. Cobb,* 178 *Ga.* 544, 548 (174 S. E. 131).

Special ground 2 complains of the following charge: "If you find from the evidence in this case, gentlemen, that both the defendant and the plaintiff's deceased husband were guilty of negligence on the occasion inquired about by her, but if you find that the negligence of the defendant, if you find that he was negligent, was greater than or exceeded the negligence of the deceased, Mr. Pickering, then in that event the plaintiff might be entitled to recover, but the amount of recovery, if any, would be reduced in proportion as the negligence of her deceased husband,

if he was negligent, contributed to the injury and damage complained of in this petition."

This charge was not error, though it would have been more appropriate to have charged in the language of Code § 105-603.

Special ground 3 assigns error on the following charge: "When the driver of an automobile is confronted with a sudden emergency, if he finds he is so confronted, is not liable because he might not exercise good judgment under the circumstances, but is held liable in such emergency for the exercise of ordinary care and diligence under the circumstances." This ground is without merit, for the reason assigned. *Whitfield* v. *Wheeler,* 76 *Ga. App.* 857, 860 (47 S. E. 2d 658).

Special ground 5 asserts that the court erred in charging the following: "I charge you that in this case the defendant has alleged that if the death of G. C. Pickering did not result solely from negligence of G. C. Pickering, the same resulted from no negligence and was an unavoidable accident. If you should find under the evidence in this case that the defendant was in the exercise of ordinary care, or that the accident did not result from the failure of the defendant to exercise ordinary care, and that the deceased was in the exercise of ordinary care, then the casualty would be what the law describes as a mere casualty for which no one is to blame, and after considering all the testimony and the law as the court charges you, if you believe that the death of G. C. Pickering resulted from an accident, pure and simple, then the plaintiff would not be entitled to recover and you would return a verdict for the defendant."

The first of the plaintiff's insistences is that the court used the word "casualty" in two entirely different senses. In considering this charge as a whole, this was a mere slip of the tongue or inadvertence, and not a reversible error. *Carter* v. *Buchanan,* 9 *Ga.* 539; *City of Atlanta* v. *Champe,* 66 *Ga.* 659.

The second contention is that the charge was error, because there was no issue as to an unavoidable accident. The contention is without merit; the defendant in his answer contended that the damages were the result of an accident so far as he was concerned, which was enough to authorize the charge on the theory of accident, and there was evidence sufficient to sustain a finding by the jury that the defendant used proper care; therefore the

theory of accident was involved, and the charge was not error. *Richter* v. *Atlantic Co.*, 65 *Ga. App.* 605, 609 (16 S. E. 2d 259).

■ Special ground 6 complains that the court instructed the jury: "And I charge you it was the duty of G. C. Pickering in this case to watch for traffic on the highway before attempting to cross the same, and if he failed to look, and you find that such failure was the preponderating cause of his injury and death, then I charge you that the plaintiff is not entitled to recover in the case." The charge invaded the province of the jury and was error. *Davis* v. *Whitcomb*, 30 *Ga. App.* 497 (2) (118 S. E. 488).

■ Special ground 7 of the amended motion assigns as error the following charge: "If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained, and if he fails to do this and is killed, there can be no recovery, if by taking proper precaution the deceased could have avoided the consequences of the negligence of the person inflicting the injury resulting in death."

The first contention in this ground is that the court erred in inserting the following: "if not the possibility of danger." Whether or not this charge was error, it would have been more appropriate to omit this phrase, thereby avoiding any possibility of confusing the jury.

The second contention in this ground is that the court erred in using the phrase, "proper precautions," because it was not sound as an abstract principle of law. The plaintiff insists the court in giving these instructions should have used "ordinary care" as the standard. There is no merit in the ground. While the phraseology of the instructions given in the case does not appear in the case as reported, a perusal of the record discloses that language identical with that employed in the charge complained of was approved in *Freeman* v. *Nashville &c. Ry. Co.*, 120 *Ga.* 469 (47 S. E. 931).

Special ground 8 complains that the court erred in instructing the jury: "I charge you that an accident, in a strict legal sense,

as applied to negligence cases, refers to an event which is not proximately caused by negligence, but instead arises from an unforseen or unexplained cause. An accident may indicate a happening which, although not wholly free from negligence by some person, was not proximately caused by a failure of either of the parties to a case to exercise ordinary care in the situation." This charge was not error. *Eddleman* v. *Askew*, 50 *Ga. App.* 540 (8) (179 S. E. 247); *Baggett* v. *Jackson*, 79 *Ga. App.* 460 (54 S. E. 2d 146).

■ Special ground 9 asserts that the court erred in charging the jury: "I charge you that should you find from the evidence in this case that the defendant was guilty of some act of negligence which may have contributed to the casualty suffered by Mr. Pickering, but you further find that Mr. Pickering, by the exercise of ordinary care could have discovered said negligence by the use of his sense of sight in an ordinarily diligent way and could have prevented the casualty from occurring by the use of his sense of sight in such manner, then the plaintiff would not be entitled to recover." This charge was error. *Davis* v. *Whitcomb*, 30 *Ga. App.* 497 (2) (118 S. E. 488).

There was sufficient evidence to support the verdict. The general grounds are without merit.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*

## ON MOTION FOR REHEARING.

■ The defendant earnestly insists that the evidence demanded a verdict in his favor, and for that reason any error committed by the court in denying the motion for new trial was harmless to the plaintiff.

The petition alleged that some of the acts of negligence that caused the death of the plaintiff's husband were that, on the occasion when he was fatally injured by being struck with an automobile driven by the defendant, the defendant was negligent in operating his automobile in violation of Code (Ann. Supp.) § 68-301 at a greater speed than under the alleged circumstances was reasonable and safe; and that the defendant was negligent in not having his automobile under control, and negligent in not turning his automobile to the left so as to avoid striking the deceased. The evidence showed that the tragedy occurred about Dalton in the highway leading from Dalton to Chatsworth; that

the defendant's automobile was headed in the direction of Chatsworth; that the deceased, who lived on the side of the highway—which was the right side of the highway for those traveling from Dalton—had just stepped out of his driveway on the pavement preparatory to going over to the bus which he intended to board; that the road was straight for two hundred feet from that point toward Dalton and was dry at the time. As to the speed of the plaintiff's automobile, from the testimony of some of the witnesses, it could be reasonably inferred that the deceased, who weighed between 170 and 180 pounds, was knocked 33 feet by the impact of the defendant's automobile; and one of the witnesses, who observed the defendant's automobile approach the deceased, testified it was traveling at a speed of from 45 to 50 miles per hour. There was other evidence of speed, which we think hardly necessary to recite here. It is obvious from the evidence that we have referred to that a jury was authorized to decide that the speed at which the defendant drove his automobile was greater than was reasonable and safe under the circumstances related.

There was also testimony that the right tire marks of the defendant's automobile at the deceased's driveway were within eighteen inches of the edge of the pavement; that the skid marks extended 28 feet in the direction of Dalton and the direction from which the defendant approached the driveway, and 14 feet past the driveway; and that the right fender and light on the defendant's car were damaged—all of which indicated that the deceased was struck at a point very close to the entrance to his driveway. There was a conflict in the testimony as to whether the defendant could have seen the deceased in time to have avoided hitting him if he had his automobile under such control as ordinary care would dictate. The defendant testified that he did not see the deceased until he struck him, and the defendant's witness testified that he could see the defendant's automobile approaching the deceased for about 150 yards before striking him.

Since, according to some of the witnesses, the paved portion of the pavement was 20 feet wide, and other witnesses testified that the bus was pulling off the pavement on the opposite side from that where the deceased entered upon it, the jury could logically infer that, if the defendant had exercised ordinary care, he could

have turned his automobile to the left and avoided colliding with the deceased. This is true though a defendant's witness, the driver of the bus, stated that in his opinion, had the deceased turned to the left, he would have struck one of two cars that had just passed him. It was not clearly understandable just how the defendant's automobile by turning to the left could have struck an automobile that had already passed traveling in the same direction. But all of these matters were for consideration by the jury.

So we conclude that there was some evidence that supported the plaintiff's contentions that the defendant was negligent in the specified particulars on the occasion under investigation.

The case was not one in which a verdict in the defendant's favor was demanded by the evidence.

Of course, if the deceased's own carelessness was the sole proximate cause of his death, or if he was not in the exercise of ordinary care for his own safety, he could not recover. The only evidence as to lack of care on his part was that he did not look in the direction of Dalton before stepping on the pavement. The defendant's bus driver testified that the defendant's car was apparently 150 feet from him after he was either on the pavement or very near its edge. The evidence did not disclose whether he had looked in the direction of Dalton before he went upon the paved portion of the road. In these circumstances it was a question for the jury whether he was guilty of such negligence as would debar his wife's right to recover for his death.

■ Ground 2 of the defendant's motion for a rehearing is based upon the contention that the ownership of a policy in a mutual insurance company is not such interest as would disqualify a juror from serving on a jury which was deciding a case in which the mutual insurance company had an interest. The defendant contends that there would be no vested interest because the policyholder would only receive dividends as declared by the board of directors of the insurance company. Stockholders in most corporations only receive dividends when declared by the board of directors of that corporation. Therefore, this contention of the defendants is without merit.

In *Gossett* v. *State*, 201 *Ga.* 809 (41 S. E. 2d 308), it was held that policyholders of a mutual insurance company would be dis-

qualified because the ownership of such policies would give to jurors a personal interest in the verdict of the case. In that case it was not stated what type of mutual policies were held by the jurors and, after a perusal of the record in that case, it was disclosed that no copy of the policy was made a part of the record, and it is assumed that the court was not concerned with what type of mutual policy the jurors held. Therefore, this ground of the motion for a rehearing is without merit for the reasons assigned.

The defendant contends that the plaintiff did not show that she was forced to use her peremptory challenge to rid the jury of Springfield. This court ruled that the plaintiff was denied one of the six peremptory strikes to which she was entitled. The record shows she used six strikes to rid the panel of jurors who were objectionable to her. If Springfield had not been allowed to remain on the panel, but had been replaced by another juror, the plaintiff might have selected the new juror in preference to the jurors allowed to remain on the jury. Therefore, the plaintiff was denied one of the peremptory strikes.

*Rehearing denied. Felton, C. J., and Nichols, J., concur.*