46947. GARRETT v. THE STATE.

SUBMITTED MARCH 8, 1972—DECIDED MARCH 17, 1972.

*Robert D. Peckham, James E. McDonald, Jr., R. Dennis Withers,* for appellant.

*Ken Stula,* for appellee.

CLARK, Judge. For decision here is a well-argued contention that an accused found guilty of abandonment of his pregnant wife has been deprived of his constitutional right to equal protection of the law based on his poverty because the sentence of imprisonment contained a provision which authorized defendant to eschew imprisonment by payment of a specified sum to his wife and weekly child support to be paid through the probation officer.

Appellant was found guilty on November 10, 1971, by a jury in the State Court of Clarke County of the offense of abandonment of a pregnant wife (*Code Ann.* § 74-9903; Ga. L. 1964, p. 224). Following a pre-sentence investigation the court entered judgment on December 1 sentencing defendant to twelve months in a penal institution. Acting under authority contained in *Code Ann.* § 27-2709 (Ga. L. 1956, pp. 27, 31; 1958, pp. 15, 20; 1960, p. 1148) the court suspended the sentence upon condition that the defendant "pay to Juanita Garrett the sum of $200 on December 1, 1971, and $40 per week child support."

After going to jail for two days defendant filed a motion in arrest of judgment alleging that "due to his financial inability to make said payments" the sentence was in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution.

Citing those United States Supreme Court cases which have ruled that the prohibition of the Equal Protection

Clause extends to instances of invidious discrimination based upon wealth or indigency appellant contends that the instant sentence violates the principles contained in such cases as Griffin v. Illinois, 351 U. S. 12 (76 SC 585, 100 LE 891) (1956); Williams v. Illinois, 399 U. S. 235 (90 SC 2018, 26 LE2d 586) (1969); Morris v. Schoonfield, 399 U. S. 508 (90 SC 2232, 26 LE2d 773); and Tate v. Short, 401 U. S. 395 (91 SC 668, 28 LE2d 57). Able counsel recognizes these cases are not quatuor pedibus currit with that sub judice but argues they demonstrate the principle that "a man's treatment before the bar of Justice should not vary with his financial condition has steadily gained substance."

None of these cases is applicable even though they decided important principles which recognized "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." Griffin, supra, p. 19. Thus the Griffin case ruled an indigent criminal defendant was entitled to trial transcript at public expense. In the Williams case the headnote concludes: "Though a state has considerable latitude in fixing the punishment for state crimes and may impose alternative sanctions, it may not under the Equal Protection Clause subject a certain class of convicted defendants to a period of imprisonment *beyond the statutory maximum* solely by reason of their indigency." (Emphasis supplied.) In the Morris case the case was remanded with the concurring opinion by Justice White explaining "As I understand it, Williams v. Illinois does not mean that a state cannot jail a person who has the means to pay a fine but refuses or neglects to do so." The Tate ruling was based on the Williams case and held: "It is a denial of equal protection to limit punishment to payment of a fine for those who are able to pay it but to convert the fine to imprisonment for those who are unable to pay it."

Frequently overlooked is the recognition in the Williams case of the sentencing judge's prerogative to make the punishment fit the situation rather than Gilbert & Sullivan's musical mandate to "make the punishment fit the crime." Chief Justice Burger stated at page 243: "The mere fact

that an indigent in a particular case may be imprisoned for a longer time than a non-indigent convicted of the same offense does not, of course, give rise to a violation of the Equal Protection Clause. Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear. The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences. Thus it was that in Williams v. New York, 337 U. S. 241, 247 (1949), we said: 'The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender.'"

The courts of other states have thus far been unanimous in ruling adversely to this contention of denial of equal protection by reason of poverty under their non-support statutes. State v. Ducey, 25 Ohio App. 2d 50 (266 NE2d 233) (1970); State v. Davis (Mo.), 469 SW2d 1 (1971); State v. Hopp (Iowa), 190 NW2d 836 (1971). As the Iowa court points out: "[T]he statute under which defendant was sentenced makes no invidious distinction between rich and poor. All who wilfully fail to support their children are equally subject to its punitive provisions."

The Ohio court makes certain ethical observations which deserve restatement here: "The obligation to support one's own children is one owed to the public generally . . . It is reasonable and proper for members of the public at large to assume that if another member of society desires to increase the population by the addition of his progeny, he full well intends to assume the burdens attendant therewith. It is also reasonable for the state to provide for certain measures which exact penalties and sanctions for those who do not see fit to meet the attendant responsibilities of his progeny. Aside from the human and social desirability of parents providing life's necessities for their children, it would indeed be unreasonable to expect the general public, the state, or private social bodies to incur the financial burden

of supporting children brought into our society through the free will of a man and woman who are able, but unwilling, to incur that burden." Pp. 54, 55.

We concur in these views that the best interests of society require the husband and father to fulfill his moral and legal obligations and that he should not be permitted to transfer this obligation to society. He should recognize the child conceived by him is entitled to come into this world with its mother having obtained the subsistence and necessary medical care during pregnancy so as to be born without crippling defects which result from malnutrition or lack of proper medical care.

The trial court here imposed an imprisonment sentence without an alternative fine. He then gave the prisoner the opportunity to escape incarceration by permitting him to make payment of money which would only fulfill the defendant's obligations to wife and children. If the "stick" of durance vile failed to move the accused, he might be enticed into action by the "carrot" of freedom. But the appellant's counsel complains at length that the court required "forthwith" payment, the judgment being dated December 1 and the payment of $200 being required that same day. Although the female figure representing justice has her eyes covered, it must be recognized that this blindfold does not prevent the trial and appellate courts from recognition of realities of life.

The reality is that the verdict of guilty was rendered on November 10 and the defendant necessarily knew for at least 20 days prior to sentence that he would be required to fulfill the moral and legal obligation of providing financial help. The court did not act unreasonably in requiring immediate funds for the enceinte spouse.

The court further recognizes that a trial judge in passing sentence in child support and wife abandonment offenses considers such elements as finances and employability. With the benefit of a pre-sentence report covering such factors the court imposed a jail sentence without an alternative of a fine but then went further and gave the defendant an

opportunity to avoid durance vile by immediate payment of specified moneys. Such judgment did not deprive defendant of his constitutional rights of equal protection.

*Judgment affirmed. Jordan, P. J., and Deen, J., concur.*