49072. BENNETT v. HALEY et al.

CLARK, Judge.
This appeal is by one of two motorist defendants from an adverse verdict and judgment thereon obtained by Haley, a plaintiff pedestrian, against Bennett alone; the jury verdict exonerated Kinney, the co-defendant. Haley has by a separate appeal sought a new trial against Kinney, the exonerated co-defendant. This campanion appeal, No. 49073, *Haley v. Kinney,* 132 Ga. App. 525, is dealt with by another opinion because it involves questions of law differing from those presented in the instant appeal.

Plaintiff Haley was crossing Prince Avenue at its intersection with Milledge Avenue in Athens. He was using a marked crosswalk in a heavily populated area. There was an overhead traffic light at this intersection. Although disputed by defendants in some details, plaintiff's version was that after walking across Milledge Avenue from the west to its east side, he made a right angle turn to his left to go northwardly across Prince

Avenue, and then waited on the south side of Prince for the traffic light to change from green to red for east-west vehicular traffic. This change would give him as a pedestrian the green light to cross Prince Avenue. Prince Avenue is 32 to 40 feet wide and has four lanes of traffic, two for westbound and two for eastbound. Co-defendant Kinney had previously brought his westbound van vehicle to a stop 6 to 8 feet from the crosswalk in conformance with the red light. The location of Kinney's van was in the third automobile lane as counted in the direction plaintiff was proceeding. Kinney's testimony was that the light changed to green so "I started to move and just as I started this man came running right in front of me, and I applied my brakes, stopped, and he ran right on past me in front of the car that was coming up to my right." (T. 81-82).

This other car which hit plaintiff was westbound and being driven by the co-defendant, appellant Bennett. Bennett testified he was in the outside lane of Prince Avenue traveling westwardly and when he was 150 to 250 feet away he observed the traffic light to be red, at which time he removed his foot from the gas and coasted forward at a speed of approximately ten miles per hour waiting for the light to change. At this time he saw defendant Kinney's van stopped in the lane to Bennett's left waiting for the light to change. There was also another automobile in that same lane halted at the rear of Kinney's van. When he was approximately 25 feet behind the second vehicle the traffic light changed to green and he observed the brake lights on co-defendant Kinney's van go off and the van started forward. Because the van and the automobile to Bennett's left obscured the view from that direction he was unable to see any pedestrians who might have been using the crosswalk north of the center line of Prince Avenue. As he approached a point near the rear of the second vehicle he noticed that the brake light on the Kinney van came on. He placed his foot on his brake but did not apply his brakes. He said plaintiff "leaped in front of me," that he saw Haley for only a split second, that Haley was "in the air" when hit, was moving rapidly and he (Bennett) didn't have time to turn to the right or left. His vehicle traveled

two or three feet after the impact which occurred in the pedestrian crosswalk area. He also testified plaintiff had told him that he, plaintiff, was sorry and that it was his fault. He acknowledged Haley was three-fourths across Prince Avenue when hit by the Bennett car.

Testimony from the investigating policeman was that the Bennett vehicle stopped two feet into the crosswalk. His opinion was that Bennett was going only 10 to 15 miles per hour. Although he testified the Bennett vehicle laid down 24 feet of skidmarks, he later stated Bennett traveled only six feet.

An eyewitness (Kitchens) who was in a car parked on the opposite side of the intersection and headed eastwardly stated that when he first noticed him, the plaintiff was already crossing Prince Avenue which was when the light had changed to green for east-west traffic. According to him, Haley was running all the time that the witness saw him and when plaintiff got to the far side of Kinney's van he jumped and twisted right in front of appellant Bennett's car which was proceeding slowly at the time it hit the pedestrian.

There are 24 enumerations of error. In dealing with them we will follow the order in which they are argued in the excellent briefs furnished by both counsel.

1. The first enumeration of error avers the court erred in charging on plaintiff's right to recover future medical expenses on the basis that there was no evidence which was sufficient or definite enough to support such charge. Appellant relies upon *Clayton County Bd. of Ed. v. Hooper,* 128 Ga. App. 817 (198 SE2d 373).

When appellant's able attorney made his exception to this portion dealing with future medicals, the trial judge replied "I gave considerable thought to that. It was a very close question. I thought that the evidence of the shots he had received over a protracted period of time justified submitting that issue." (T. 448). The evidence to which the judge referred was testimony that plaintiff had been receiving shots for pain two or three times weekly during the period of more than three years which had passed since the incident. This included a shot administered the night previous to the trial. There was medical and lay testimony confirming both the

seriousness of plaintiff's injuries and the necessity for future medical expenses. This testimony together with plaintiff's exhibit No. 17 which was 12 pages of bills from one doctor, itemized as to services, shows shots administered on various dates from June 23, 1971, to September 16, 1973. All of this evidence was sufficient to authorize the charge excepted to. Compare this evidence with the language in *Clayton County Bd. of Ed. v. Hooper,* supra, where the court's opinion states: "An examination of the evidence shows that no evidence was presented from which the jury could ascertain, except by mere conjecture and speculation, that the plaintiff would ever have any such future expenses." (p. 818).

Here the erudite jurist followed the directive of *Peak v. Cody,* 113 Ga. App. 674, 676 (4) (149 SE2d 519) that "the court . . . should clearly inform the jury that the plaintiff can recover only for those items of future medical expenses authorized by the evidence." As it can serve as a pattern instruction on future medicals we quote it in full: "Now, the Plaintiff seeks to recover in this case not only for past medical expenses but for medical expenses which he will incur in the future as a proximate result he contends of the events giving rise to this lawsuit. If you find that the Plaintiff is entitled to recover and that the evidence shows with reasonable certainty that the Plaintiff will sustain in the future medical expenses proximately caused by one or both of the Defendants who you find liable and shows with reasonable certainty the amount of such future medical expenses, the Plaintiff would be entitled to recover the amount thereof, reduced to its present value by the method which I have already explained to you in connection with reduction of his future earnings to their present value unless the Plaintiff's recovery should be diminished by his own negligence, if any, under the rules of law which I have already given you in charge." (T. 427, 428).

2. The second enumeration of error contends the court erred in failing to charge the language of appellant's request relating the definition of "unavoidable accident." Appellant relies principally upon *Baggett v. Jackson,* 79 Ga. App. 460 (1) (54 SE2d 146) from which his request to charge was taken. As the court

charged fully on the law of "accident" (T. 419), this was sufficient to satisfy the requirements of the instant case. Our ruling in no way denigrates the force of appellant's argument and the binding precedent of *Baggett v. Jackson,* supra, as well as the subsequent cases of *Pickering v. Wagnon,* 91 Ga. App. 610 (86 SE2d 621) and *Boatright v. Sosebee,* 108 Ga. App. 19 (132 SE2d 155) cited in his brief. Nevertheless, appellate courts recognize that in a negligence case where the charge comprises 25 pages, the appellant was not actually harmed by the absence of a few words pinpointing such language as defendant here requested, so long as the jury is sufficiently informed of the principle of "accident."

Accordingly, we find no harm or injury done to the appellant which would require a new trial. *Arcady Farms & Milling Co. v. Betts,* 93 Ga. App. 255 (2) (91 SE2d 289).

3. The briefs next deal with the ninth enumeration wherein appellant contends the court erred in failing to charge defendant's request relating to a plaintiff who recklessly tests an observed and clearly obvious peril. This request was taken verbatim from *North DeKalb Little League v. Holland,* 119 Ga. App. 439 (168 SE2d 169). It is based upon a defense contention that "the evidence in this case would have supported a finding by the jury that plaintiff commenced crossing the street on a yellow light in violation of Code Ann. § 68-1613 (b) (2)." (Brief, page 12). Our review of the transcript indicates the absence of any direct evidence that the plaintiff pedestrian came within the category of "one who recklessly tests an observed and clearly obvious peril." While there are some conflicts in the testimony of the witnesses with reference to whether the plaintiff was running or walking at the time that he had traversed at least three-fourths of the way across Prince Avenue, there was no testimony from any witness contrary to plaintiff's testimony that he waited for the light on Prince Avenue to change to green facing him before he started to cross the four-lane street. (T. 194, 206). The testimony of the other witnesses was that Haley was observed by them for the first time only after he had already gone more than half-way across Prince Avenue.

None testified as to seeing him prior to that point in time and accordingly did not contradict plaintiff in this respect. We therefore hold the trial court did not err in refusing to charge as requested.

4. In enumerations Nos. 20 and 16 the appellant argues that the court erred in admitting into evidence over objection two medical bills and three hospital bills on the basis that they had not been properly identified. This argument is based upon that portion of Code Ann. § 38-706.1 which requires the litigant using that Code section for identification of doctor and hospital bills to show "that such expenses were incurred in connection with the treatment of the injury, disease or disability involved in the subject of litigation at trial." Our examination of the testimony and exhibits indicates that the evidence was sufficient to satisfy the codal requisite. *Lester v. Alexander Co.,* 127 Ga. App. 470 (1) (193 SE2d 860) is therefore not applicable to the case at bar.

5. The third enumeration of error attacks that portion of the instructions to the jury in which the court dealt with "testimony and evidence as to what are alleged to be prior statements made in advance of the trial and out of court by Mr. Kitchens (the eyewitness) and Mr. Bennett who testified in this case which are claimed to be inconsistent with that witness' testimony given in this case." Appellant argues that as thus stated the court gave an expression or intimation of an opinion as to what had or had not been proved. This would of course be in violation of Code § 81-1104 and be a mandatory cause for new trial. *Canady v. State,* 68 Ga. App. 735 (23 SE2d 870).

"On review the charge must be considered as a whole and each part in connection with every other part of the charge." *Zayre of Ga. v. Ray,* 117 Ga. App. 396, 398 (5) (160 SE2d 648). "A charge, torn to pieces and scattered in disjointed fragments, may seem objectionable, although when put together and considered as a whole, it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall." *Brown v. Matthews,* 79 Ga. 1 (4 SE 13).

A reading of the entire charge shows no error here. Following this quoted portion the court charged (T. 409,

410) the general principles of law concerning inconsistent prior statements by any witness and then dealt with prior inconsistent or contradictory statements in depositions and requests for admissions. As noted in appellee's brief (p. 26) this latter method had been used by the defendants to assail plaintiff's testimony.

In the light of the entire charge and the evidence in the case there was no illegal opinion or intimation expressed. " 'Where the context removes all probability of an erroneous impression which might be created by the excerpt as an isolated fragment a new trial will not be granted. [Cits.]' " *Smith v. State,* 29 Ga. App. 178 (1) (114 SE 581).

6. Enumeration No. 22 attacks the manner in which the court dealt with the order of closing arguments between attorneys for the two defendants. Able counsel recognizes that where there are multiple defendants the order of argument as between them is in the sound discretion of the court, citing *Gunnells v. Cotton States Mut. Ins. Co.,* 117 Ga. App. 123, 126 (6) (159 SE2d 730); *Hines v. Donaldson,* 193 Ga. 783, 789 (1) (20 SE2d 134); *Pealock v. Pealock,* 227 Ga. 795, 797 (3) (183 SE2d 397); *Duke v. Steed,* 127 Ga. App. 541 (194 SE2d 257). Counsel contends, however, that the trial judge failed to exercise any discretion by "resolving the issue on the purely fortuitous circumstance of alphabetical order of last names."

The transcript shows at pages 395, 396 that Bennett's counsel inquired as to the order of argument. In reply the court stated that the plaintiff would have the opening argument, the two defendants would then make their arguments and the plaintiff would have the concluding argument. He further stated that "The order as between the Defendants will be the one whose name comes first in the alphabet, Mr. Bennett." This was objected to on the basis that "We think the Defendant Bennett should have the concluding argument for the Defendants since he is the first party named, and presumably the one they are most going after." To this the court answered, "I don't know who they are going after most. This is a subjective matter of intent. I am confronted with a choice, and I picked them al-

phabetically." (T. 396). This language of the trial court shows that the judge recognized he had and did exercise his discretion. While he made his selection on the basis of alphabetical order we are unable to accept appellant's contention that this was a total failure to exercise discretion.

It is true, as counsel quotes from *Griffin v. State,* 12 Ga. App. 615, 620 (5) (77 SE 1132) that it must be " 'an impartial discretion, guided and controlled in its exercise by fixed legal principles, a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to defeat the ends of substantial justice.'" As exercised here it was done in a manner that did not contravene nor defeat the ends of justice. Moreover, to obtain a new trial appellant must show injury as well as error. Code Ann. § 81A-161. The denial here of the concluding argument was between two defendants and was a matter for the discretion of the trial court. It does not come within those cases such as *Chapman v. Atlanta & West Point R.,* 74 Ga. 547 (a), *Milligan v. Milligan,* 209 Ga. 14, 15 (3) (70 SE2d 459), where the litigant was denied his right to open and conclude. On the basis of the evidence in this case we find there was neither harm nor error in requiring counsel for defendant Bennett to argue before defendant Kinney's advocate.

7. The next argument presented in the briefs deals with Enumeration No. 10 in which appellant asserts the court erred in refusing to charge his request No. 16. The language of this request was taken substantially from *Whitaker v. Jones &c. Co.,* 69 Ga. App. 711, 716 (26 SE2d 545) with a substitution of the word "motorist" for wrongdoer. It dealt with the principle that a person is not required to anticipate or foresee the unusual. As pointed out by counsel, this court ruled in *Palmer v. Stevens,* 115 Ga. App. 398, 406 (19) (154 SE2d 803) that this principle was applicable to a vehicle-pedestrian case. But this principle does not apply where, as here, the motorist was approaching a marked crosswalk with a red traffic light for the motorist; and the motorist was unable to see any person who might then be traversing the marked crosswalk from that portion of the crosswalk obscured by the

halted cars which were awaiting the change of traffic signals, in the lane to his left.

8. This same holding would apply to the eleventh enumeration of error in which the appellant contends the court erred in failing to charge his request dealing with a "sudden appearance." The request taken from 3 Blashfield Automobile Law and Practice, 663, § 141.24 was a correct statement of the law but not applicable to the evidence in this case.

9. The next portion of appellant's brief combined enumerations Nos. 5, 7 and 14 and contends the court erred in charging the jury in such a manner as to place an absolute duty on defendant motorist to avoid colliding with plaintiff pedestrian. We find no merit in these enumerations of error as we do not interpret the court's charge as having instructed the jury to impose such absolute duty. The charge on Code Ann. § 68-1626 (a) with the addition of the word "reasonably" was correct as also was the charge of Code Ann. § 68-1613 without qualification. In this connection see *Whiteway Laundry &c. v. Childs,* 126 Ga. App. 617, 620 (9, 10) (191 SE2d 454). Enumeration No. 7 charges the court erred in refusing defense request to charge numbered 1 which was an excerpt from *Brown v. Kirkland,* 108 Ga. App. 651, 655 (3) (134 SE2d 472). As worded, the request was argumentative in nature as contrasted with the opinion from which the request was derived.

10. The next argument deals with enumeration of error No. 4 and is based upon the court having charged Code Ann. § 68-1656 (b). This codal paragraph states that "Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle." Appellant contends such charge was not adjusted to the evidence in that (1) the stopped vehicle (Kinney) had already started up and (2) there is no evidence that defendant here saw or should have seen the pedestrian crossing. We disagree. Since there was a marked pedestrian crosswalk this Code section was pertinent to and adjusted to the pleadings, issues and evidence.

11. The sixth enumeration of error contends the court should not have charged on the elements of recovery for mental suffering, humiliation and embarrassment because the plaintiff failed to testify as to these elements. Since the evidence showed the plaintiff to have been crippled from his injuries, that his right leg had atrophied, that he used crutches, and that he had a bodily surgical scar, the charge was proper.

12. We find no merit in the 13th enumeration of error contending the court erred in charging Code Ann. § 68-1716 (a). This section concerns when a motorist should sound his horn. Such charge was applicable to the facts here where defendant appellant was approaching a marked pedestrian crosswalk with his view thereof obscured by the two halted vehicles and with the traffic light changing color during the defendant's approach.

13. The 15th enumeration of error argues that the court had erred in refusing to grant a thorough and sifting cross examination of plaintiff for impeachment purposes. Examination of the transcript discloses no reversible error.

14. There is no merit in the contention contained in enumeration No. 21 that the court erred in overruling defendant's motion for directed verdict. "It is only where reasonable men may not differ as to the inferences to be drawn from the evidence that it is proper for the judge to remove the case from jury consideration. [Cit.]" *State Farm Mut. Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878). The case sub judice involved questions of negligence and proximate cause which are usually for jury determination. We find a conflict in evidence on these issues to the extent that a verdict was not demanded. Code Ann. § 81A-150 (a).

15. Two enumerations of error (17 and 18) deal with testimony of the plaintiff's physician. Over objection the doctor testified "I think the old boy (plaintiff) would be walking today without his crutches if he hadn't been in the accident." In the light of all of the physician's testimony this particular opinion which was elicited from the doctor upon cross examination was not error such as to require a new trial.

Similarly, we see no reversible error in the

overruling of the phrase "I guess" when considered in the context of the entire testimony from this doctor. We have here a semantic situation distinguishable from the cases cited by appellant. *Pritchett v. Higgins,* 111 Ga. App. 718, 720 (5) (143 SE2d 47) and *Morris v. Stokes,* 21 Ga. 552, 570 (3). The words "well I guess so," as used here, did not in their context connote conjecture, speculation, or uncertainty.

16. The remaining enumerations of error (12, 19 and 20) present for the first time in our Georgia courts the question as to whether medical and hospital bills paid by Medicaid are recoverable by a plaintiff. Enumeration No. 12 contends the court should not have charged on plaintiff's right to recover medical, hospital and drug bills because "there is no showing that these expenses were expenses of Junior Haley." (T. 452). The 19th enumeration says the court erred in excluding from evidence testimony by one of the doctors that his bill had been paid by Medicaid. The 20th enumeration avers error in the court admitting into evidence over objection the medical and hospital bills paid by Medicaid.

It should be noted that Medicaid differs from Medicare. Both were created under the Social Security Act. Medicare is a form of social insurance for the elderly with premiums being paid by those participating under the Social Security Act. The Medicaid Program provides free care in the form of public assistance to those whose indigency qualifies them for receipt of such benefits.

Should the collateral source rule apply to Medicaid payments? The collateral source rule permits an injured party to recover damages from a defendant notwithstanding that the plaintiff received compensation from other sources. It is an established principle in Georgia's jurisprudence as shown in the collection of citations on page 201 of *Cincinnati, N. O. &c. R. Co. v. Hilley,* 121 Ga. App. 196 (173 SE2d 242). Those decisions show that Georgia does not permit a tortfeasor to derive any benefit from a reduction in damages for medical expenses paid by others, whether insurance companies or beneficent boss or helpful relatives.

Although appellant recognizes that the collateral source rule is followed in this jurisdiction he contends

that the rule should not be applied to Medicaid. The basis of appellant's contention is twofold. First, he asserts that Medicaid is a gratuitous benefit since the patient is not liable for the service rendered. Second, since the states which participate in the Medicaid program are directed to seek recovery from any third party liable for the services rendered by Medicaid, appellant asserts defendant is thereby subjected to payment of double damages.

As to the gratuity feature, it is clear that the collateral source rule is applicable even though the benefit bestowed is gratuitous. *Nashville R. Co. v. Miller,* 120 Ga. 453 (1) (47 SE 959); *Cincinnati, N. O. &c. R. Co. v. Hilley,* 121 Ga. App. 196, 202, supra; *Limbert v. Bishop,* 96 Ga. App. 652, 657 (101 SE2d 148); *Storey v. Pless,* 100 Ga. App. 756 (112 SE2d 407). "[A]s a general rule, the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages." 22 AmJur2d 286, 287, Damages, § 206.

As to the possibility of defendant being called upon to pay the same damages to reimburse a government agency it should be noted that the Medicaid statute, 42 USCA § 1396 et seq., differs from 42 USCA § 2651. The latter expressly creates by statute a right to recover hospital, medical, surgical or dental care and treatment furnished by the federal government. No such statutory legal liability is created in the Medicaid law as to third party liability but there is a directive that "the State or local agency will seek reimbursement for such assistance to the extent of such legal liability." 42 USCA § 1396a (a) (25).

In *Whitaker v. Talbot,* 122 Ga. App. 493 (177 SE2d 381) this court expressly dealt with possible double liability under the Federal Medical Care Recovery Act and ruled such possibility did not exist where the government chose not to pursue its statutory remedies. In the case at bar there exists no statutory vehicle for reimbursement. This makes it crystal clear that the defendant here cannot be subjected to double liability.

As is stated in its headnote, *Whitaker v. Talbot,*

supra, specifically held that "the Federal Medical Care Recovery Act does not preclude the plaintiff from recovering for the value of medical care furnished by the Armed Services of the United States to his dependent minor daughter." Appellant asserts that certain language in that opinion shows that this court did not there intend for the collateral source rule to apply when the payment was the result of a gratuity. It is true that in the opinion there is a discussion to the effect that the court did not consider the medical care there supplied to have been furnished gratuitously but rather as an inducement for military service. Nevertheless, that was only supplementary to the decision as the *ratio decidendi* was on the collateral source rule. This is clear when the court there states: "We hold that plaintiff has a right of recovery for the expenses in question. The issue appears to be controlled by *Howard v. Hall,* 112 Ga. App. 247, 254 (145 SE2d 70), where it was held that a father could recover the monetary value of the nursing care rendered to his injured minor son at home by his mother and grandmother."

Furthermore, it is not significant that the collateral source sub judice is a government sponsored program for the indigent. In *Southern R. Co. v. Cabe,* 109 Ga. App. 432, 440 (5) (136 SE2d 438), this court ruled that there was no error in refusing to allow testimony as to the amount of money which the plaintiff was to receive pursuant to his federal railroad retirement pension. (See also *Wachtel v. Leonard,* 45 Ga. App. 14 (1) (163 SE 512) in which this court held that money paid to an injured policeman pursuant to a municipal ordinance "is equivalent to money paid under a policy of accident insurance"). The Medicaid program is social legislation; it is the equivalent of health insurance for the needy; and, just as any other insurance form, it is an acceptable collateral source. See *Thompson v. Milam,* 115 Ga. App. 396 (154 SE2d 721).

We add the plaintiff's case may have been highly prejudiced had the trial court allowed evidence of the Medicaid payments to reach the jury. As the United States Supreme Court has pointed out, "evidence of collateral benefits is readily subject to misuse by a jury. [Cit.] It has long been recognized that evidence showing

the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." Eichel v. New York Central R. Co., 375 U. S. 253, 255 (84 SC 316, 11 LE2d 307).

Finally, we note that "the cost of medical care often provides both attorneys and juries in tort cases with an important measure for assessing the plaintiff's general damages. [Cit.] To permit the defendant to tell the jury that the plaintiff has been recompensed by a collateral source for his medical costs might irretrievably upset the complex, delicate and somewhat indefinable calculations which result in the normal jury verdict." Helfend v. Southern Cal. Rapid Transit Dist., 2 Cal. 3d 1, 11 (84 Cal. Rptr. 173).

The court did not err in refusing to admit the collateral source evidence offered by appellant. Nor was there any error in refusing to permit cross examination of the doctor as to his having accepted payment in full for his services in accordance with the amounts stated in the Medicaid regulations.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED FEBRUARY 5, 1974 — DECIDED JUNE 18, 1974 — REHEARING DENIED JULY 17, 1974 —

*Heard, Leverett & Adams, E. Freeman Leverett,* for appellant.

*William O. Carter, Gary B. Blasingame,* for appellees.