### 41199. THE STATE v. THORNTON.
(322 SE2d 711)

WELTNER, Justice.

Thornton was indicted for the murder of Mary Frances Moss. The state appealed to the Court of Appeals from an order sustaining a motion to suppress evidence, which was entered prior to the impaneling of a jury. OCGA §§ 5-7-1 (4), 5-7-2. The Court of Appeals transferred the case to this court.

1. The district attorney did not give timely notice to the defense that the state intended to seek the death penalty, Unified Appeal, § II. A. 1., 246 Ga. at A-7, and for this reason this is *not* a case "in which a sentence of death was imposed or could be imposed." Constitution of Georgia of 1983, Art. VI, Sec. VI, Par. III (8). Hence, this appeal was filed properly in the Court of Appeals.

As a matter of policy, however, we deem it appropriate, at the present time, that all murder cases be reviewed by this court. Accordingly, we adopt today the following order: "The Court of Appeals is directed to transfer to the Supreme Court all cases in which either a sentence of death or of life imprisonment has been imposed upon conviction of murder, and all pre-conviction appeals in murder cases, whether or not timely notice was given by the district attorney as required by Unified Appeal, § II. A. 1., 246 Ga. at A-7. This order shall be effective as to cases docketed in the Court of Appeals after December 1, 1984." *Collins v. State,* 239 Ga. 400, 403 (3) (236 SE2d 759) (1977).

2. More than a year after Thornton was indicted, the police authorities of Cobb County obtained search warrants in both Fulton and Cobb Counties which alleged in part: "Items needed are dental impressions, dental photographs, and dental examination of Nathaniel Thornton, and that said evidence is presently concealed on the person of the named accused and on the premises located at 2612 Bolton Road, Atlanta, Ga. Office of Dr. T. J. David. . . ." Thornton

was taken by the Cobb County police to the office of Dr. David in Fulton County, where dental impressions were made.

The trial court granted Thornton's motion to suppress the dental impressions based on the conclusion that the provision against incrimination of the Constitution of Georgia of 1983, Art. I, Sec. I, Par. XVI, had been violated because the police officers had required of Thornton the doing of an act for the purpose of producing evidence to be used against him, as opposed to merely taking evidence from him.

In *Day v. State*, 63 Ga. 667 (2) (1879), this court held that the incrimination provision of the Georgia Constitution forbids compelling a defendant to place his foot in a track for the purpose of using the results of such a comparison in evidence against him. See to the same effect, *Elder v. State*, 143 Ga. 363 (85 SE 97) (1915). In *Aldrich v. State*, 220 Ga. 132 (137 SE2d 463) (1964), a state statute which would require a motor vehicle operator to drive his vehicle upon a set of scales when ordered to do so by a state agent was held to violate the incrimination provision of the Georgia Constitution. In *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979), the Court of Appeals held that a defendant cannot be required to produce a handwriting exemplar to be used in evidence against him.

The holding in *Creamer v. State*, 229 Ga. 511 (192 SE2d 350) (1972) (where a defendant was required to submit to surgery to remove a bullet from his body to be used in evidence against him) exemplifies a "taking" from an accused of evidence which is *not* proscribed by our Constitution. See also *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973) (where a blood sample was taken from the defendant to be used in evidence against him.)

The taking of dental impressions comes factually within the latter category of cases. Unlike *Creamer*, there is here no surgical foray into the body of an accused which would require the additional precaution of an evidentiary hearing before a superior court to assure safe medical procedures. We decline to extend our Constitution so far as would prohibit reasonable police practices, such as the taking of fingerprints, to which the taking of dental impressions is analogous.

*Judgment reversed. All the Justices concur, except Hill, C. J., who concurs specially, and Smith, J., who dissents.*

DECIDED NOVEMBER 21, 1984.

*Thomas J. Charron, District Attorney, Debra Halpern Bernes, Charles C. Clay, Assistant District Attorneys, Michael J. Bowers, Attorney General,* for appellant.

Nathaniel Thornton, *pro se.*

HILL, Chief Justice, concurring specially.

While I join the Court's opinion in this instance, I do not approve the police tactics utilized here.

The defendant was indicted for murder and freed on bond. He was taken into custody at his Cobb County home and transported to the dentist's office in Fulton County on the basis of search warrants issued in each county.

During the motion to suppress hearing, the trial court expressed the view that the procedure utilized should not be condoned, and that the officers should have applied to the trial court for authority to obtain the dental impressions. I agree. Upon motion and after hearing, the trial court could have rendered an appropriate order, which would have avoided the unusual use of a search warrant, issued ex parte, to enter the defendant's mouth and take dental impressions.

In the future, this writer will not approve the use of a search warrant to enter the body of the defendant other than to draw blood, except upon order or search warrant issued by a superior court, the procedure used in *Creamer v. State*, 229 Ga. 511, 512-514 (192 SE2d 350) (1972).

SMITH, Justice, dissenting.

Nathaniel Thornton, appellee, is a 60-year-old black man with a third grade education who is a caretaker. He was accused of the May 1982 murder of his common-law wife. He was indicted in September of 1982 and in November of that year released on $25,000 bond, that was posted by his long-time employer.

At the time of the murder a complete autopsy was conducted on the victim. There was no request to make dental impressions. One year later, the Cobb County police decided they needed to obtain dental impressions of appellee's teeth after they learned that based on examinations of photographs of the deceased that there was a reasonable expectation that marks on the deceased were teeth marks. The police wanted appellee's dental impressions to try to match them with the apparent teeth marks in the photographs of the victim. There was no direct evidence in the case, all of the evidence was circumstantial.

The Cobb County Police obtained two search warrants. One in Cobb County and the other in Fulton County, both had essentially the same wording in pertinent part: "Nathaniel Thornton has committed a crime against the laws of Georgia and that said accused has in his possession instruments, articles, papers, items, substance, objects, matter or things that constitute tangible evidence of the commission of the crime of murder that said tangible evidence is comprised of apparent teeth marks on the body of Mary Francis Moss which there is probable cause to believe were caused by the teeth of

Nathaniel Thornton. Items needed are dental impressions, dental photographs, and dental examination of Nathaniel Thornton and that said evidence is presently concealed on the person of the named accused and on the premises located at 2613 Bolton Road, Atlanta, Ga., Office of Dr. T. J. David. The probable cause on which the belief of the affiant is based is as follows: On the 31st day of May, 1982, Mary Francis Moss was murdered in Cobb County by having been beaten to death. The murder occurred at 501 Chastain Road, Marietta, Georgia. In the autopsy, certain marks were noticed on the arms of the deceased. Further examination of photographs of the deceased by Dr. J. T. David, a dentist, has indicated that there is a reasonable expectation that these are teeth marks. Nathaniel Thornton was indicted for the murder of Mary Francis Moss by the Grand Jury of Cobb County on September 24, 1982. (Further oral testimony given by affiant.)"

When the police officer swore under oath that there was evidence "presently concealed on the person of the named accused and on the premises located at 2613 Bolton Road Atlanta," he knew perfectly well that there was absolutely nothing in Atlanta but a dentist who under the direction of the police would force the appellee to do the "act" of pressing his teeth into the dental medium to provide police with allegedly self-incriminating evidence. There was "presently" no evidence in the premises located on Bolton Road and the only way any would get there would be by arresting Thornton and taking him there. Therefore, the allegedly self-incriminating evidence was not present until the appellee was arrested and taken by police force to Bolton Road and forced to do a self-incriminating act.

Our constitution provides that we are to be free from all unreasonable searches and seizures and "no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized." Art. 1, § 1, Par. 13. See also OCGA § 17-5-23. The search and seizure was totally unreasonable, lacking in probable cause, and the trial court was correct when it held that "the face of said search warrants contain irregularities affecting substantial rights of the accused," in that he was illegally arrested and carried to the place described in the search warrant.

Also, when the Cobb County Police came over the fence where appellee worked as the caretaker and picked up the appellee, they told him that he was under arrest and that he must accompany them to the dentist to have the dental impressions made and a dental examination. They did so without an arrest warrant. This was an illegal arrest and under Dunaway v. N. Y., 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979), is forbidden. In Dunaway, supra, the United States Supreme Court held that police must have probable cause or the consent of the suspect to pick up a suspect and transport him to the

station house for interrogation. The court refused in that case to adopt a multifactor balancing test of " 'reasonable police conduct under the circumstances.' " Supra at p. 213, and declared that seizures are " 'reasonable' only if supported by probable cause." Supra at p. 214. There was no probable cause under the facts of this case. If there was, the illegal arrest made all the evidence obtained inadmissible. Even if police had not informed appellee that he was under arrest, the moment they restrained his liberty he was under complete arrest. See *Williams v. State*, 166 Ga. App. 798 (305 SE2d 489) (1983).

The State's claim that the appellee never objected, therefore, he was not forced to give allegedly self-incriminating evidence would be deemed ludicrous if this was not such a serious matter. They also claim that he never tried to call an attorney. The fact is that appellee was allowed to call his employer only after he resisted being taken away. He called his employer because he was concerned about leaving the property without notice to his employer. The police told him that there was no need to notify his lawyer, although the police knew that he had a lawyer representing him at that time.

There are only four circumstances in which a warrantless arrest may be made, see OCGA § 17-4-20. None of those circumstances were present in this case. The trial court properly found that "counsel for the State readily characterized the custody of the defendant as an arrest made pursuant to the aforementioned search warrants, and that the police were in possession of no arrest warrant for the defendant. Furthermore, the court heard no evidence of exigent circumstances justifying a warrantless arrest. This was an illegal arrest. See Dunaway v. N. Y., supra.

The majority knows that it cannot declare the language of our constitution and statute void, but this case gets as close to it as possible. Our constitution provides, "No person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Constitution Art. 1, Sec. 1, Par. 16. Our statutory law provides, "No person who is charged in any criminal proceeding with the commission of any indictable offense or any offense punishable on summary conviction shall be compellable to give evidence for or against himself." OCGA § 24-9-20. We have consistently held that our constitution, unlike that of the United States Constitution, prevents the state from forcing individuals to produce evidence, oral or real, regardless of whether it is testimonial or not. Our constitution provides greater protection than the United States Constitution. This is permissible under the law and in such an instance it is the state constitution that prevails.

In construction of the provisions of our constitution regarding search and seizure we have been instructed to construe the provisions

liberally and refuse to permit any first or doubtful steps which may invade our rights in this respect. *Underwood v. State*, 13 Ga. App. 206 (78 SE 1103) (1913). The majority is not only taking a step, it is in my opinion silently taking away a precious right. The rights to be free from illegal search and seizure and arrest have been called "the sacred civil jewels which have come down to us from an English ancestry, forced from the unwilling hand of tyranny by the apostles of personal liberty and personal security. They are hallowed by the blood of a thousand struggles, and were stored away for safe-keeping in the casket of the constitution. It is infidelity to forget them; it is sacrilege to disregard them; it is despotic to trample upon them. They were given as a sacred trust into the keeping of the courts, who should with sleepless vigilance guard these priceless gifts of a free government." *Underwood*, supra at p. 213. We must maintain a delicate balance that is only allowed in a free society. We must always remember that when the balance is tipped in favor of the government against the individual we no longer have freedom. The protections that we take for granted were fought for by people who were routinely taken from their homes, had their property seized, and were tortured into confessions. I believe in law and order and I believe in finding the guilty and punishing them for their crimes, but I will never believe, as apparently the majority of this court does, that the end justifies the means.

The trial court was correct when it found that the appellee was compelled to do the act of placing and pressing his teeth into malleable dental medium to produce reproductions of impressions of his teeth. He was forced to do an act against his will and that clearly falls within the holding of *Day v. State*, 63 Ga. 667 (1879). *Day*, supra, was the first case to apply Georgia's constitutional privilege against compelled self-incrimination just two years after the act was ratified. This case clearly falls under *Day*, supra, but the majority says that it falls under *Creamer v. State*, 229 Ga. 511 (192 SE2d 350) (1972).

The Court of Appeals in ruling that an accused cannot be forced to give handwriting exemplars correctly distinguished *Creamer*, supra, by saying, "[t]he distinction is between forcing an accused to *do* an act against his will and requiring an accused to *submit* to an act. While the latter 'takes evidence from the defendant' [cit.], and is constitutionally acceptable, the former compels the defendant, in essence, to *give* evidence which violates an individual's right not to incriminate himself." *State v. Armstead*, 152 Ga. App. 56 (262 SE2d 233) (1979). If the appellee in this case had been forced to fit his teeth into the dental impressions seen in the photographs as Day was forced to put his foot in shoetracks, hopefully this court would acknowledge that the case is controlled by *Day*. But, they refuse to see that the same result is mandated when the appellee was forced to do

the act that made it possible to create the dental impressions.

The accused in *Creamer*, supra, had a bullet, a foreign object in his body, that entered his body when he was shot by another. If an accused cannot be forced to display an amputated leg, an external part of his body, for purposes of identification in Georgia, *Blackwell v. State*, 67 Ga. 76 (1881), how can an accused be forced to an act that involves the inside of his body that might produce self-incrimination evidence?

Furthermore, the accused in *Creamer*, supra, was given every procedural safeguard. There was a hearing before a superior court to determine whether or not a search warrant should be issued to remove the bullet. An attorney was appointed to represent the accused and the hearing continued as a show-cause hearing. After a full hearing the court ordered the accused to undergo a physical examination to determine whether or not the defendant would be substantially impaired by the removal of the bullet. The hearing was resumed and the examining physician testified regarding the examination results and the procedure that would be followed in removing the bullet. The trial court ordered the removal of the bullet. The accused appealed to this court and we ruled that the removal was proper as the accused was not forced to do an act.

This appellee was placed under arrest without an arrest warrant and transported from Cobb to Fulton County on the basis of two search warrants. Search warrants will not suffice. He was given no hearing. He was told by the arresting officers that he was under arrest and did not need a lawyer, when in fact he had one. This is wrong.

The majority is wrong when it says taking fingerprints and taking dental impressions are analogous. The taking of fingerprints is a necessary means of identification. The same is true of photographs. There is no other easy method by which police can maintain records. Fingerprints and photographs are devices used to maintain accurate records of people arrested. Dental impressions, on the other hand, are not routine methods of identification of arrested persons. They are within the body not outside. The only purpose in obtaining dental impressions is to force the appellee to provide allegedly self-incriminating evidence.

The police tactics here are tactics that are to be feared. These are acts that are expected in police states, but they should be openly condemned in a free society such as ours. The only thing that makes us free is that we have held individual freedom above that of governmental intrusion and control. When that is gone, we will no longer be free.

The appellee is a caretaker who was determined to be an indigent. Counsel was appointed for him and counsel did a superior job at the hearing on the motion to suppress and he was able to suppress

the evidence of the dental imprints. Subsequently, the appellee was declared a non-indigent and counsel was directed by the Cobb County Circuit Defender's Office that he was no longer counsel. Counsel notified appellee and his employer that he had been removed and he quoted a fee for his continued representation. He never heard from appellee again, nor did he hear from appellee's employer. The State then filed its appeal from an order granting the motion to suppress. The State filed briefs, but none were filed on behalf of the appellee.

This is a typical case of making the end justify the means and making law and order supreme over the precious rights of individuals. What the majority overlooks is that the constitution and Bill of Rights were enacted based upon experience. They were designed to protect people from government. When we overlook or remove this fact, we are well on the road to a police state.

It grieves me when the majority in the light of the facts in this case states that "we decline to extend our constitution so far as would prohibit reasonable police practices." The police actions here violated the appellee's rights against self-incrimination and illegal arrest, not to mention 4th Amendment rights. Indeed, the personal rights of the people have been wiped out under the code words of "law and order" and "reasonable police practices." Truly this should cause pause for thinking on the part of everyone.

I strongly dissent.