S90A1101. DENTON v. CON-WAY SOUTHERN EXPRESS, INC. et al.
S90A1245. GEORGIA POWER COMPANY v. FALAGAN et al.
(402 SE2d 269)

SMITH, Presiding Justice.

We consolidated these appeals because they represent challenges to the constitutionality of OCGA § 51-12-1.[1] For the reasons which

---

[1] OCGA § 51-12-1 provides:

(a) Damages may be either general or special, direct or consequential.

(b) In any civil action, whether in tort or in contract, for the recovery of damages arising from a tortious injury in which special damages are sought to be recovered or evidence of same is otherwise introduced by the plaintiff, evidence of all compensation, indemnity, insurance (other than life insurance), wage loss replacement, income replacement, or disability benefits or payments available to the injured party from any and all governmental or private sources and the cost of providing and the extent of such available benefits or payments shall be admissible for consideration by the trier of fact. The trier of fact, in its discretion, may consider such available

follow, we hold that subsection (b) of OCGA § 51-12-1 is unconstitutional under state constitutional law. We, therefore, reverse Case No. S90A1101 and affirm Case No. S90A1245.

Our tort law allows every person to recover the damages that result from torts committed to them. OCGA §§ 51-1-6; 51-1-9. It is generally recognized, as stated in Prosser & Keeton Torts 5th ed., § 4 at p. 25, that

> [t]he "prophylactic" factor of preventing future harm has been quite important in the field of torts. The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm.

Among the damages that can be recovered are general (those that the law presumes flows from the tortious act; they may be recovered without proof of any amount), OCGA § 51-12-2 (a), and special (those that actually flow from a tortious act; they must be proved in order to be recovered), OCGA § 51-12-2 (b). Proof of special damages, such as the cost of medical care can provide a jury " 'with an important measure for assessing the plaintiff's general damages. . . .' Helfend v. Southern Cal. Rapid Transit Dist., 2 Cal.3d 1, 11 (84 Cal. Rptr. 173)[,]" *Bennett v. Haley*, 132 Ga. App. 512, 525 (208 SE2d 302) (1974), and in "all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages." OCGA § 51-12-7.

Our courts have consistently held that neither the wealth of the plaintiff nor the defendant is relevant. " '[A] man's treatment before the bar of Justice should not vary with his financial condition. . . .' " *Garrett v. State*, 125 Ga. App. 743, 744 (188 SE2d 920) (1972). Because of its irrelevance and prejudicial value, our courts have also held that a litigant's insurance policy is not only inadmissible, it can be the ground for a mistrial. *City Council of Augusta v. Lee*, 153 Ga. App. 94, 99 (264 SE2d 683) (1980). Such evidence is highly prejudicial and it can influence the entire case, no matter which side attempts to introduce it.[2] As stated in *Bennett v. Haley*, 132 Ga. App., supra at

---

benefits or payments and the cost thereof but shall not be directed to reduce an award of damages accordingly.

[2] The rationale for not disclosing a defendant's insurance to a jury is stated as follows: [T]he strict exclusion of this fact by most courts is due, not merely to its lack of logic. . . . but chiefly to the assumption that a knowledge of the fact of insurance against liability will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance com-

524-25:

> "[E]vidence of collateral benefits is readily subject to misuse by a jury. (Cit.) It has long been recognized that evidence showing the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." Eichel v. New York Central R. Co., 375 U. S. 253, 255 (84 SC 316, 11 LE2d 307).

Over 100 years ago this Court illustrated the infectiously prejudicial effect of admitting collateral sources. The Court rejected a railroad's argument that the decedent's life insurance policy should be allowed to reduce the amount it owed the widow for the wrongful death of her husband in *Western & Atlantic Railroad v. Meigs*, 74 Ga. 857, 868 (1885), and stated:

> If her recovery could thus be reduced, it might be insisted that, where the husband's life was insured for more than she was allowed to recover under the law as its actual cash value, the company could claim a balance against the family of the deceased, on the idea that the killing of the husband and father was a positive pecuniary benefit to them.

Our Courts have adhered to the principle that evidence of collateral sources is inherently prejudicial because its infectious nature tends to contaminate the entire trial. *Collins v. Davis*, 186 Ga. App. 192, 193 (366 SE2d 769) (1988) (does not matter whose insurance coverage is admitted, it is prejudicial because its effect is not self-limiting, but flows over into other considerations); *Moore v. Price*, 158 Ga. App. 566, 567 (281 SE2d 269) (1981) (admission of the existence of insurance policy grounds for a mistrial). See *Cincinnati, N. O. &c. R. Co. v. Hilley*, 121 Ga. App. 196, 200 (173 SE2d 242) (1970), for the "Collateral Source Rule" and cases in which it has been applied.

We now turn our attention to the Georgia Constitution. All government originates with the people and is founded only upon their will, and solely for the good of the whole. Art. I, Sec. II, Par. I of the Constitution of Georgia of 1983. The Georgia Constitution represents the will of the people, and legislative acts that violate the Constitution are void and it is our duty to declare them void. Art. I, Sec. II, Par. V of the Constitution of Georgia of 1983. The Constitution of

---

pany that has already been paid for taking the risk. 2 Wigmore, Evidence, § 282a (3) (Chadbourn rev. 1979).

Georgia of 1976, within the Bill of Rights provided: "Protection to person and property is the paramount duty of government and shall be impartial and complete." The Constitution was amended, and a new sentence (below in bold) was added. The provision now proclaims: "Protection to person and property is the paramount duty of government and shall be impartial and complete. **No person shall be denied the equal protection of the laws.**" Art. I, Sec. I, Par. II of the Constitution of the State of Georgia of 1983.[3] Appellant Georgia Power argues that the second sentence added to the Bill of Rights merely conformed the constitutional provision to this Court's interpretation of the first sentence. In *Ga. R. &c. Co. v. Wright*, 125 Ga. 589, 601 (54 SE 52) (1906), rev'd on other grounds 207 U. S. 127 (28 SC 47, 52 LE 134), this Court held that the first sentence "states in other language the same principle laid down in the [C]onstitution of the United States when that instrument declares that no State shall deny to any person the equal protection of the laws." However, our rules of constitutional construction lead us to a different conclusion. As this Court stated in *Thompson v. Talmadge*, 201 Ga. 867, 885 (41 SE2d 883) (1947):

> "It is an established rule of construction that, where a constitutional provision has received a settled judicial construction, and is afterwards incorporated into a new or revised constitution, or amendment, it will be presumed to have been retained with a knowledge of the previous construction, and courts will feel bound to adhere to it. . . ."

Additionally as this Court announced in *Wellborn v. Estes*, 70 Ga. 390, 397, 403 (1883):

> The object of construction, as applied to a written constitution, is to give effect to the intention of the people in adopting it. . . . [I]t is not to be supposed that any words have been employed without occasion, or without intent that they should have effect as part of the law. . . .

> [T]he people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated. . . .

> [F]or, we repeat that it is scarcely conceivable that a case can

---

[3] The Fourteenth Amendment to the United States Constitution provides, in pertinent part: "No state shall make or enforce any law which shall . . . deny to any person . . . the equal protection of the laws."

arise where a court would be justifiable in declaring any portion of a written constitution nugatory . . . or so treating it as to render any word there "inoperative," or "idle" or "nugatory."

If the first and second sentence of Art. I, Sec. I, Par. II of the Constitution of the State of Georgia of 1983 merely express the same right, then the first sentence becomes "inoperative," "idle," and "nugatory." We refuse to obliterate an entire sentence in our Bill of Rights.

The Georgia Constitution offers Georgia citizens greater rights and more benefits than the Federal Constitution. *Colonial Pipeline v. Brown*, 258 Ga. 115, 118 (365 SE2d 827) (1988) (reversed punitive damage award under the excessive fines clause of the Ga. Constitution, Art. I, Sec. I, Par. XVII); *State v. Thornton*, 253 Ga. 524, 528 (322 SE2d 711) (1984) (Smith, J., dissenting); *LoGiudice v. State*, 251 Ga. 711, 715, fn. 6 (309 SE2d 355) (1983) (Smith, J., dissenting); and *Green v. State*, 260 Ga. 625, 627 (398 SE2d 360) (1990). The difference in the Georgia Constitution and the Federal Constitution was recognized by Justice Weltner in his dissent in *Poulos v. McMahan*, 250 Ga. 354, 365 (297 SE2d 451) (1982), when he stated:

While the majority opinion presents a thoughtful analysis of the treatment of this issue by the United States Supreme Court, we need look no further than our own Constitution.
. . .
The statute violates the constitutional requirement of impartial and complete protection to person and property.
"Legislative acts in violation of this Constitution . . . are void, and the Judiciary shall so declare them." [Cit.]

The Georgia Constitution requires statutes to be "impartial and complete."[4] The amended Code section that has been challenged, OCGA § 51-12-1 (b), allows a jury to consider inherently prejudicial evidence which could be misused. " 'There can be no equal justice where the kind of trial [or the damages] a man gets depends on the amount of money he has.' [Cit.]" *Garrett*, supra at 744. Because inherently prejudicial evidence is allowed only to show the plaintiff's sources, juries will be misled. If for example, both the plaintiff and

---

[4] Additionally, the due process clause of the Georgia Constitution demands that statutes be definite and certain. OCGA § 51-12-1 (b) fails to give a jury any suggestion as to what to do with the evidence. People of "common intelligence must necessarily guess at its meaning and differ as to its application. . . ." *City of Atlanta v. Southern R. Co.*, 213 Ga. 736, 738 (101 SE2d 707) (1958). The statute's lack of standards, specific factors to be considered, and failure to offer guidance invites uncontrolled, intrinsically arbitrary, disparate, and unfair decisions.

the defendant are insured, but the jury is only informed of the plaintiff's coverage, it may assume that only the plaintiff has insurance and the plaintiff's insurance should pay for the loss caused by the tortfeasor. Allowing such evidence against the plaintiff, who exercises the statutory right to prove all necessary expenses in the estimate of damages, OCGA § 51-12-7, could defeat the plaintiff's statutory right to recover the damages that result from another's tortious acts, OCGA §§ 51-1-6 and 51-1-9,[5] and also defeat the "prophylactic" factor of preventing future harm. Prosser & Keeton, supra at 25. For the reasons stated above, we hold that OCGA § 51-12-1 (b) violates that provision of the Georgia Constitution which mandates that the paramount duty of government is the protection of person and property and that the protection shall be impartial and complete. It is, therefore, our duty to declare it void.

S90A1101. *Denton v. Con-Way Southern Express, Inc. et al.*

This opinion resolves all of the errors enumerated except for error number six. With regard to enumeration of error number six, we agree with the appellant that the charge was inadequate.

*Judgment reversed. Benham, J., and Judge Hugh D. Sosebee, Sr., concur; Fletcher, J., concurs specially, except as to the disposition of the sixth enumeration of error to which he dissents; Judge Thomas Pope, concurs specially; Clarke, C. J., dissents; Bell, J., dissents as to the disposition of the constitutionality of OCGA § 51-12-1 (b), but would reverse based upon the sixth enumeration of error; Weltner, J., not participating. Hunt, J., disqualified.*

S90A1245. *Georgia Power Company v. Falagan et al.*

The trial court did not err in holding that OCGA § 51-12-1 (b) is "void pursuant to Georgia Constitution, Article I, § I, Paragraph II."

*Judgment affirmed. Benham, J., and Judge Hugh D. Sosebee, Sr., concur; Fletcher, J., and Judge Thomas Pope concur specially; Clarke, C. J., and Bell, J., dissent; Weltner, J., not participating. Hunt, J., disqualified.*

FLETCHER, Justice, concurring specially.

I agree with the result reached by the majority opinion, but write separately to express my views regarding the constitutionality of OCGA § 51-12-1 (b).

---

[5] Some have argued that the plaintiff might get a windfall if a jury is denied the right to know about the collateral sources, however, "[i]f there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing. [Cit.]" 22 AmJur2d 639, Damages, § 566.

The majority opinion correctly points out that, historically, not only has evidence of collateral sources been determined to be irrelevant, see generally *French Management Co. v. Long*, 169 Ga. App. 702 (2) (314 SE2d 666) (1984), evidence of collateral sources has been recognized as creating a "substantial likelihood of prejudicial impact." *Eichel v. New York Central R. Co.*, 375 U. S. 253, 255 (84 SC 316, 11 LE2d 307) (1963). As such, a statute authorizing the admission in evidence of collateral sources should be carefully scrutinized by the courts. At a minimum, such a statute must be drawn with great precision in order to ensure that the prejudices inherent in admitting evidence of collateral sources are limited and that the due process pitfalls are avoided. OCGA § 51-12-1 (b) fails to accomplish either of these goals.

A statute is unconstitutionally vague, and therefore violates due process, if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 712 (300 SE2d 673) (1983). This court has held that "an act of the General Assembly which is afflicted with such an infirmity is unenforceable and therefore void." *City of Atlanta v. Southern R. Co.*, 213 Ga. 736, 738 (101 SE2d 707) (1958).

"A vague law impermissibly delegates basic policy matters to . . . juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U. S. 104, 108-109 (92 SC 2294, 33 LE2d 222) (1972). The vagueness doctrine "requires legislatures to set reasonably clear guidelines for . . . triers of fact" to apply to statutes. *Smith v. Goguen*, 415 U. S. 566, 572-573 (94 SC 1242, 39 LE2d 605) (1974). OCGA § 51-12-1 (b) not only fails to establish any means of calculating the measure of damages in a given case, it also provides no clear guidelines to assist the trier of fact in determining for what purposes evidence of collateral sources should be considered. As such, the statute is too vague to be enforced and is, therefore, unconstitutional under the due process clauses of the Georgia and United States constitutions.

I would also note that the language of the statute authorizing the admission in evidence of "all . . . wage loss replacement, income replacement . . . or payments available to the injured party from any and all . . . private sources . . ." is unconstitutionally vague. What does this language mean? What does it include? Is it expansive enough to allow a trier of fact to consider evidence of gifts, financial assistance from a family member or religious or charitable organization, alimony, child support, gambling and lottery winnings, trust funds, tax refunds, stock dividends, and countless other arbitrary sources of funds? In painting with such a broad brush, the General Assembly has left us with a statute which is entirely too vague. This

is particularly true when one considers that the statute provides for the admissibility of evidence that is otherwise irrelevant and immaterial to the issues in the action and fails to provide the trier of fact any guidelines as to how these facts may be considered or applied in its deliberations.

I have examined statutes from other states which have modified the common law collateral source rule. None of these statutes leaves the damage award entirely to the subjective determination of the trier of fact, as does OCGA § 51-12-1 (b). These other statutes specifically limit the evidence of collateral benefits which may be introduced, and/or provide guidelines for the trier of fact to apply in considering evidence of collateral benefits.[6]

Therefore, I conclude that while a statute could be drafted which would avoid the due process problems associated with vagueness, this statute falls far short of doing so. For these reasons, I find OCGA § 51-12-1 (b) to be unenforceable and void.

I am authorized to state that Judge Thomas Pope joins in this special concurrence.

DECIDED MARCH 15, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Bennett & Hamilton, Lindsay H. Bennett, Jr., Hubert E. Hamilton III,* for appellant (case no. S90A1101).

*Jones, Cork & Miller, H. Jerome Strickland, H. J. Strickland, Jr.,* for appellant (case no. S90A1245).

*Dickens, Mangum, Burns & Moore, G. Lee Dickins, Jr., Middleton & Anderson, Eugene Brooks, Webb, Carlock, Copeland, Semlar & Stair, Thomas S. Carlock, D. Gary Lovell, Jr., Davis, Gregory & Christy, Hardy Gregory, Jr., Hurt, Richardson, Garner, Todd & Cadenhead, Harold N. Hill, Jr., Richard L. Greene,* for appellee.

---

[6] See, e.g., Arizona, A.R.S. § 12-565 (allows only evidence of payments or benefits which result from the plaintiff's injury); California, Civil Code § 3333.1 (evidence of collateral benefits is limited to benefits received from Social Security, disability, health or accident insurance); Connecticut, Gen. Stat. § 52-225 (requires the trial court to reduce the amount of a jury award where evidence of specific enumerated collateral benefits is introduced); Florida, Fla. Stat. § 627.7372 (provides for the trial court to instruct the jury to deduct collateral source benefits from the verdict in tort cases arising out of the operation of motor vehicles); Illinois, Ill. Rev. Stat. § 2-1205 (provides for reducing the judgment in a medical malpractice case by enumerated percentages where evidence of specified collateral benefits is admitted); Indiana, Ind. Code § 34-4-36-2 (provides for the admission of certain collateral source payments and specifically excludes others); Iowa Code § 668.14 (allows evidence of collateral benefits relating to economic losses resulting from the tort except to the extent payments are pursuant to a state or federal program or are assets of the plaintiff or the plaintiff's family); Minnesota, Minn. Stat. § 548.36 (limits collateral sources to payments related to the injury or disability in question).

*Alston & Bird, G. Conley Ingram, Dow N. Kirkpatrick, Harmon, Owen, Saunders & Sweeney, David C. Will, H. Andrew Owen, Dennis, Corry, Porter & Thornton, R. Clay Porter, Craig P. Siegenthaler,* amici curiae.

